3101.   SOUTHERN LIFE INSURANCE CO. *v.* LOGAN.

1. Where a policy of life insurance provides that the insured shall belong to a named division of policy-holders, and the insurance company therein promises, within a designated time after the death of the insured, to pay to the beneficiary, "out of the mortuary fund on hand in the division to which the member belongs, an amount not exceeding [a named sum], or the full amount raised by one mortuary assessment upon all members in good standing in said division at the time of the assured's death, not in excess of said sum," after the designated time has elapsed the beneficiary may maintain an action at law against the company upon the policy. Prima facie the beneficiary is entitled to recover the amount stipulated in the policy, but the insurance company may show in defense that it has made an assessment on all the members in good standing in the division involved and has not raised the amount stated, and thus diminish the recovery to the amount actually realized. The burden of showing how many members there are in the division, and whether the assessment regularly made would or would not have produced the amount named in the policy, is upon the insurance company.

2 Though a policy of insurance may provide for the payment of assessments and semi-annual dues, and may stipulate that "failure to pay semi-annual dues or assessments, when due, renders this policy null and void," still if, at a time when the policy is legally in force, the company declines a tender of the assessments or dues, on the ground that the insured is not a policy-holder, and notifies the insured and the beneficiary that it regards the policy as no longer of force and effect, it is not incumbent upon the insured or the beneficiary to con-

tinue to tender the dues or assessments. The notification in advance
that the dues or assessments will not be accepted waives the tender
of them.

3. Under the act of August 17, 1906 (Acts 1906, p. 107), the applica-
tion on which an insurance policy is based is not to be considered as
part of the policy or contract between the parties, unless a copy thereof
is attached to or accompanies the policy. Statements made in the
application are not to be treated as warranties or covenants, on account
of the failure or falsity of which the policy may be avoided, unless a
copy of the application is attached to the policy or accompanies it,
though representations contained in the application, if fraudulently
made, may give to the insurance company the right to avoid the
policy.

4. Although in the proof at the trial it may be shown that one of the
representations made in the application upon which the policy was
issued, but which did not accompany the policy, was untrue, still, if
the company desired to avoid the policy on account of this misrepre-
sentation as an act of fraud, it was incumbent upon it to plead the
matter specifically, and in the absence of such a plea it can not take
advantage of the particular misrepresentation.

5. The evidence as to whether the policy was procured by fraud was con-
flicting, but was amply sufficient to support the verdict, and no suf-
ficient reason appears for this court to interfere with the discretion
of the trial judge in refusing to grant a new trial.

DECIDED JUNE 7, 1911. REHEARING DENIED JULY 1, 1911.

Action on policy; from city court of Americus—Judge Crisp.
November 7, 1910.

*M. C. Edwards,* for plaintiff in error.

*W. T. Lane, Shipp & Sheppard,* contra.

POWELL, J. Mrs. Logan sued upon four policies of insurance
issued by the defendant company (here plaintiff in error) upon
the life of her father, W. T. Wilson. There were four separate
policies, but they are alike in all of the substantial details; the
only difference among them being as to the particular division of
policy-holders to which each of them relates. The salient pro-
vision of each policy is that in consideration of the statements
and warranties contained in the application, and of the payment
of the policy fees and semi-annual dues and the mortuary assess-
ments, "the Southern Life Insurance Company, upon satisfactory
proof of the death of William Thomas Wilson, the assured, and
the surrender of this policy properly receipted, will pay within
thirty days to Lora Langford Logan (daughter), the beneficiary
under this policy, out of the mortuary fund on hand in the division
to which the member belongs, an amount not exceeding one thous-
and dollars, or the full amount raised by one mortuary assessment

upon all members in good standing in said division at the time of the assured's death, not in excess of said sum." The policy also contains the following provision: "This contract is not binding upon the company until the policy fee is paid and the policy delivered to the assured while in good health. Failure to pay semi-annual dues, or assessments, when due, cancels this contract and renders it null and void." The material part of the company's plea is as follows: "This contract is not binding on the defendant, for the reason that there was no contract, and this particular contract is void under the very terms of said contract. Paragraph 4 of each policy sued on states: 'This contract is not binding upon the company until the policy fee is paid and the policy delivered to the assured while in good health.' Said policies have never been delivered to the assured in good health. At the date of the delivery of the policies said W. T. Wilson was in bad health, which fact was known to said W. T. Wilson and was unknown to defendant. Said Wilson was afflicted with Bright's disease, or diabetes, and other diseases, which were fatal to him, and was so afflicted at the time the policy was delivered. There was fraud in the procurement of said policy; said Wilson having stated, for the purpose of receiving said policy, that he was in good health, when in fact such was not true and said Wilson knew that same was not true. Immediately upon the discovery of this fact defendant canceled said policies, so notified plaintiff and said Wilson, and did not receive any premiums or dues; but said plaintiff, continuing her attempt to defraud said company, would not surrender said policies, but, knowing in all probability that her father's death was imminent, attempted to continue said policies to defraud said company. Defendant filed to the May term of Sumter superior court a petition to cancel said policies, setting up these allegations; but said Wilson died before the May term of court, and it was impossible to try said case, for want of parties. Defendant proposes to proceed to the final prosecution of said petition, and refers to same as part of the answer, in so far as same may be pertinent. Defendant says that no definite and fixed sum is promised to be paid, and, as members have the right to lapse policies at pleasure, it is impossible to ascertain what amount can be collected."

At the trial there was much evidence pro and con as to whether

the insured was in good health at the time the policy was issued. According to some of the witnesses, a clear case of ill health and of fraud was established. According to a number of other witnesses, the insured's ill health did not begin until some time after the policy was issued, and at the time of the issuance of the policy he was in good health. The policy fee was duly paid upon the issuance of the policy, and subsequently the payments were tendered; but it also appears that shortly after the policy was issued, the company tendered back the policy fee and refused to accept any payments from the insured or the beneficiary, asserting that the insured was not a policy-holder and that the policies were obtained by fraud, because of misrepresentations as to the state of the insured's health at the time the policy was issued. There was no proof submitted by either party as to whether an assessment had or had not been made upon the members for the purpose of paying off this policy, or as to whether such an assessment would or would not have produced the amounts named in the policy. The jury found in favor of the plaintiff for the sum of $1,000 and interest upon each of the policies, and the insurance company excepts to the judgment of the trial judge overruling the motion for a new trial.

1. By demurrer, as well as by ground of motion for a new trial, counsel for the insurance company insist that the plaintiff was not entitled to recover (at least not to recover more than a nominal sum), in the absence of proof that the assessments had been made, or that the membership of each division was such that the assessment thereon would have produced the amount sued for, or some other definitely ascertained amount. Cognate to this point and somewhat involved in it is the insistence that the liability under the policy is upon the surviving membership, and not upon the insurance company, and that it is not suable upon the policy, at least until it has been ascertained that the members of the divisions have paid into the mortuary fund the requisite amount to pay off the policy. We may dispose of this insistence at once by the statement that under the policy the company as such, and not the members of the divisions, contracts to insure and contracts to pay the amount of the insurance to the beneficiary within a designated time after the death of the insured. The amount to be paid may, in a sense, be conditional; but the promise to pay, as

such, is not conditional. The point as to whether the burden is upon the plaintiff or upon the insurance company to furnish the data upon which the liability is to be determined is not a new one, and, while there is some conflict in the authorities, the point is now very well settled by the strong consensus of judicial opinion throughout the American States that when the time stated in the policy has elapsed after the death of the insured, the beneficiary makes a prima facie case of liability for the full amount stated in the policy by showing the death of the insured, without further showing that the assessment has been made, or that the membership of the body upon which the assessment was to be made was such as that the assessment thereon would produce the amount designated. The company as a defense may show that the amount stated in the policy can not be realized by an assessment, and thus diminish the recovery. Most courts base this doctrine upon the theory that the insurance company, and not the insured or the beneficiary, is in possession of the facts essential to showing whether the amount named could be raised by the assessment, and whether the assessment had been made or not. While there are a great many cases laying down this doctrine, the one of Lake v. Minnesota Ass'n, 61 Minn. 96 (63 N. W. 261, 52 Am. St. Rep. 538), is squarely in point, and is cited here as authority for the proposition, especially because of the fact that, as this case is reported in 52 Am. St. Rep. 538, it is followed by a lengthy note citing a large number of cases which assert the same doctrine. See, also, Cooley's Briefs on the Law of Insurance, 825 et seq.

2. Even should we concede that there is not sufficient evidence of the tender of all the semi-annual dues and assessments that normally would have accrued against the policy-holders in the present case, still the conclusion is irresistible that tender of them had been waived; for, before any of them became due and payable, the company repudiated the policy, and from time to time as they were tendered refused to accept them, and reiterated its repudiation of the policies—indeed, brought an action in the superior court which was pending at the time of the death of the insured, to cancel the policies. There can be no doubt that this conduct on the part of the insurance company (which the jury by its verdict has found to be unwarranted) excused further specific tender. As Judge Russell pointedly says in *Arnold* v. *Empire Ins.*

*Co.,* 3 *Ga. App.* 685 (5), 708 (60 S. E. 470, 480): "A formal tender is unnecessary, where express declarations are made by the party to whom money is payable that he will not accept it if tendered. The law takes one who makes such a statement at his word, and does not thereafter require the doing of the vain thing." In this connection it may be proper to note that counsel for the insurance company in his argument contends that there was not sufficient evidence that proofs of death had been submitted in accordance with the terms of the policy. Even if the company's repudiation of the policy did not waive this—see *Phenix Ins. Co.* v. *Searles,* 100 *Ga.* 97 (4), (27 S. E. 779)—still there is in the record enough to show that this proof was duly made. The sixth paragraph of the petition alleges the furnishing of these proofs according to the company's requirements, and the answer does not deny this allegation of the petition. The answer does state that for lack of sufficient information the company is unable to admit or deny this paragraph; but, as this is a matter within the company's knowledge, the equivocal answer must be taken as an admission. *Raleigh R. Co.* v. *Pullman Co.,* 122 *Ga.* 700 (5), (50 S. E. 1008) ; *Jones* v. *Pope,* 7 *Ga. App.* 538, 540 (67 S. E. 280).

3. Exception is taken to an instruction of the court to the jury that while the utmost good faith is required in all applications for life insurance, still, under the law of Georgia, for the answers of the insured in the application for insurance to be express covenants or warranties that the answers are true, the application must be attached to the policy, and that in this case, the application not being attached to the policies sued on, it was not a part of the contract sued on, and therefore that the answers given in the application were not express warranties or covenants that they were true. This charge follows the law as contained in the act of August 17, 1906. (Acts 1906, p. 107; Civil Code (1910), § 2471.) It was held by the Supreme Court, in *Johnson* v. *American National Life Ins. Co.,* 134 *Ga.* 800 (68 S. E. 731), that a failure to attach the application for life insurance to a policy prevented such application from being treated as a part of the contract, or being introduced as evidence of such contract, or from being used to show that certain statements therein contained were warranted to be true; but it did not prevent the defendant from pleading that the insured had made a fraudulent statement as to his age,

or health, and that he thus induced the insurance company to issue the policy, so that it was therefore void, not as a matter of contract, but because of fraud in the procurement. Taking the instruction excepted to in connection with the entire context, the court presented the case to the jury in accordance with the ruling in the case just cited. Counsel for the insurance company asks us to certify the question to the Supreme Court as to the review of this case; but as we are of the opinion that the ruling is sound, and that the Supreme Court would so hold, we do not grant this request. An attempt to attack the constitutionality of this act is made on the ground that the body contains matter different from what is expressed in the title; but as this difference between the act and the title is not definitely pointed out, the method of attack is insufficient to authorize a consideration of that question.

4. From the summary of the plea which we have given in the statement of facts, it will be seen that the insurance company pleaded certain acts of fraud for the purpose of avoiding the policy. In the course of the evidence it appeared that several years before the date of the issuance of the policy in question, the insured had an attack of typhoid fever, from which, however, as the evidence shows, he had fully recovered. In his application the insured stated that he had never been afflicted with any severe illness or accident. Counsel for the plaintiff in error now insist that this was such a fraudulent misrepresentation as to avoid the policy. We doubt that this fact alone would be of sufficient materiality to avoid the policy, in accordance with the rule announced in the *Johnson* case, supra; but, irrespective of whether it would or would not, it is sufficient to say that this was not one of the issues involved on the trial, because the insurance company had not pleaded this fact as a defense. The rule is that the acts of fraud relied on must be specifically pleaded.

5. The insurance company, by its evidence, made a very strong showing upon its plea that the policy was procured by fraud, that the insured was in bad health at the time the application was made, and that his last illness had really begun when the policy was obtained; but there was a great deal of evidence introduced in contradiction of this, and the jury was fully authorized to find that, at the time the application was made, the policy delivered, and the first premium paid, the insured was in good health, and that he

was stricken with the serious illness some few days later. This was the real issue in the case, and it was fairly submitted to the jury. They and the trial judge heard all this testimony. They saw the witnesses. On these issues the jury has returned a verdict finding in favor of the plaintiff, and the trial judge has approved it. This court has no jurisdiction to interfere. A careful examination of the entire record shows that the case was legally tried and fairly submitted to the jury. The judgment in the plaintiff's favor must be sustained.          *Judgment affirmed.*