J. M. Sellers, S. P. Cain, for defendant.

---

## 9682. LIFE INSURANCE COMPANY OF VIRGINIA
## v. PATE.

1. Where an application for insurance is not attached to the policy nor
referred to therein, it cannot be considered as a part of the contract,
or introduced in evidence as such or to show that certain statements
there made were contracted or warranted to be true (Civil Code of
1910, § 2471); but a failure to make the application a part of the
policy does not prevent the insurer from pleading and proving that the
insured made false and fraudulent statements as to the name and ad-
dress of the doctor or doctors that attended him within a certain period,
and that he thus fraudulently induced the insurer to issue the policy,
and it was therefore void.
2. A material representation is one that would influence a prudent insurer
in determining whether or not to accept the risk, or in fixing the amount
of the premium in the event of such acceptance.
3. Questions as to the truth and materiality of representations are gen-
erally issues of fact, for determination by the jury; but where all the
testimony relating to a question of fact excludes every reasonable infer-
ence but one, the issue becomes an issue of law, for determination by
the court.

> DECIDED JANUARY 15, 1919.

Action on insurance policy; from city court of Columbus—
Judge Tigner. March 26, 1918.

J. L. Willis, A. W. Cozart, for plaintiff in error.

Hatcher & Hatcher, Ed. Wohlwender, contra.

WADE, C. J.  Mrs. Ruth Pate brought suit against the Life
Insurance Company of Virginia on two insurance policies issued

by that company to her husband, Carl L. Pate. The defendant filed demurrers, both general and special, to the petition as amended, and the court sustained the demurrers and dismissed the case. The judgment of dismissal was reversed by this court. *Pate* v. *Insurance Company of Virginia*, 19 *Ga. App.* 597 (91 S. E. 883). The case was subsequently tried upon its merits, with the result that a verdict was rendered in, favor of the plaintiff, the defendant thereupon made a motion for a new trial, which was overruled, and it excepted.

It appears from the plea and answer that several defenses were relied upon. However, for the purposes of our decision, we deem it necessary only to consider the defense that the insured was guilty of fraud in the procurement of the policies, in that he "falsely represented in his application for the insurance that he had not been attended by a physician during the past 12 months." The applications were not attached to the policies nor referred to therein, and therefore cannot be considered as a part of the contracts, or introduced in evidence as such or to show that certain statements were contracted or warranted to be true (Civil Code, § 2471; *Puryear* v. *Farmers Mutual Ins. Asso.*, 137 *Ga.* 579, 73 S. E. 851); but a failure to make the applications a part of the policies did not prevent the defendant from pleading and proving that the insured had made false and fraudulent statements as to the name and address of the doctor that had attended him within a certain period, and had thus fraudulently induced the insurer to issue the policies, and that they were therefore void, not as a matter of contract, but because of fraudulent procurement. *Johnson* v. *American Nat. Life Ins. Co.*, 134 *Ga.* 800 (68 S. E. 731); *Southern Life Ins. Co.* v. *Hill*, 8 *Ga. App.* 862 (70 S. E. 186); *Southern Life Ins. Co.* v. *Logan*, 9 *Ga. App.* 503, 508, ((71 S. E. 742). Therefore the question in this case is, did the insured, in order to procure insurance, wilfully, fraudulently, and falsely answer that he had not been attended by a physician during the past 12 months?

The applications are dated May 13, 1915, and the undisputed evidence of Dr. W. A. Arnold is that in the year 1914 he treated the insured on the following dates: May 27, June 2, June 3, and June 5. Thus the fact is established by uncontradicted evidence that the insured had been attended by a physician within twelve

months from the date of the applications. The treatment of the insured on the above-named dates was for acute pneumonia of the right lung, which lung showed, upon examination, cavities and rales, and Dr. Arnold testified that he told the insured that in his opinion he (the insured) had a tubercular lung. "In general, it may be said that the test, in determining whether questions contained in an application for insurance are material, is whether the knowledge or ignorance of the facts sought to be elicited thereby would materially influence the action of the insurer" (3 Cooley's Briefs on the Law of Insurance, 1953) ; and this general rule is not altered even where the loss arises from causes totally unconnected with the material fact misrepresented or concealed, because a true disclosure of the fact might have led the company to decline the insurance altogether, or to accept it only at a higher premium. See *Empire Life Ins. Co.* v. *Jones,* 14 *Ga. App.* 647, 656 (82 S. E. 62), and authorities there cited. Moreover, in the instant case the probable consequences resulting from the untruthful statement of the insured are somewhat magnified, when considered in connection with undisputed testimony adduced on the trial which shows to a reasonable certainty that his former doctor's diagnosis was a correct one, since only a short time after the applications were signed a letter written by him to a friend shows that he was in a hospital for the treatment of tuberculosis, and the proofs of death filed with the company state that he died of this disease. Surely, then, this misrepresentation involved a most material fact, for if the insured had truthfully answered that Dr. Arnold had treated him within the preceding twelve months, this fact would have at least put the insurance company on inquiry, and would have enabled it to ascertain from the said doctor that in his opinion the insured had a tubercular lung; and it cannot be assumed that the insurer would have issued the policies if a truthful response to the question as to what physician had attended the insured within a period of twelve months from the date of the applications had brought this fact to its knowledge. In fact the insurer's medical examiner testified in so many words that he would not have recommended the deceased for insurance had he known of his previous treatment for pneumonia and tuberculosis. Neither can it be assumed that the questions in reference to attendance by a physician within twelve months from the date of the

applications were merely idle questions intended to reveal only unimportant facts. To the contrary, it must have been the intention and expectation of the insurer that a truthful answer to such questions would reveal facts or information which might possibly deter the company from issuing the policies to the applicant, or cause the company to make such inquiry as to past medical attendance as would result in a refusal to contract. We may therefore safely infer that the misrepresentations and concealment on the part of the insured induced or brought about the contract of insurance. Of course, "in determining what constitutes attendance by or consultation of a physician, consultation or attendance for slight temporary ailments need not be considered" (3 Cooley's Briefs on the Law of Insurance, 2163); but certainly no one would or could seriously classify acute pneumonia and tuberculosis of the lung as "slight temporary ailments," since it is a matter of common knowledge that the consequences of these diseases are very often fatal.

Able counsel for the defendant in error assume the position that the materiality of the representations made by the insured was a question of fact for determination by the jury, but it appears to be well settled that while questions as to the truth and materiality of representations are *generally* issues of fact, for determination by a jury, yet where all the testimony relating to a question of fact excludes every reasonable hypothesis but one, the issue becomes an issue of law, for adjudication by the court. Richards on Insurance (3d ed.), 133 § 101; *Empire Life Ins. Co.* v. *Jones,* supra. It seems inconceivable that the failure of the insured to answer truthfully the questions as to his past attendance by a physician was due merely to lapse of memory, and that there was no intention to deceive or fraudulently induce the insurance company to enter into a contract which it would not otherwise have made. No reasonably intelligent adult of normal mind could have forgotten entirely the fact that Dr. Arnold attended him not only once but several times within the previous year, and diagnosed his trouble as acute pneumonia and tuberculosis of the lung. Nor does it appear possible that the insured could have altogether dismissed from his mind the attendance of the doctor, in view of the latter's statement to him that he (the insured) had a tubercular lung— one of the most serious and destructive diseases known to hu-

manity—and that, too, when his attention was especially directed, in the medical examination for the insurance, to the subject of tuberculosis.

There is no evidence to indicate that either the insurance company or any of its agents had any knowledge whatsoever of the untruthfulness of the representations made by the insured as to the past attendance upon him by a physician, or knew anything not disclosed to the insurer which might work an estoppel against the company.

To sum up the whole matter, the undisputed testimony showed that misrepresentations were made by the insured in his applications for the policies sued upon, that there was a concealment of a fact, which must have been wilful, and that the misrepresentations made were material and led to the issuance of the policies, and that the facts wilfully concealed were also material, inasmuch as they would have assuredly led to an investigation which would have prevented the making of the contracts.

*Judgment reversed. Jenkins and Luke, JJ., concur.*