13939.   METROPOLITAN LIFE INSURANCE COMPANY
*v.* SHAW.

Where a material statement in an application for insurance is fraudulent, and is made to induce the acceptance of the risk, the policy or contract of insurance is void ab initio.

DECIDED APRIL 10, 1923.

Action on insurance policy; from city court of LaGrange — Judge Duke Davis.   August 26, 1922.

*Battle & Arnold, Lovejoy & Mayer,* for plaintiff in error.

*J. T. Thomasson,* contra.

LUKE, J.   On November 22, 1920, the Metropolitan Life Insurance Company insured the life of Oscar W. Shaw for $148, Mrs. Sarah Shaw, wife of the insured, being named as beneficiary. Shaw died July 6, 1921.   The company refused payment, and Mrs. Shaw procured a verdict against it in the city court of La-Grange.

Several questions are raised by the motion for a new trial, but the controlling factor in this case, as we see it, is: Was the contract of insurance void ab initio because of fraud in its procurement?   Defendant specifically pleads that, as the basis of and inducement for the insurance of the policy, the insured falsely stated in his written application for insurance that at the time of said application and prior thereto he was not suffering from pulmonary tuberculosis, was in sound health, and had not been under the care of any physician within two years prior to the making of his application.   It further pleads that the applicant wilfully withheld from the company information as to his health and physical condition, and that the policy itself contained a stipulation that it would be void if the insured before its date had been attended by a physician for any serious disease or complaint, or had any pulmonary disease.

Dr. Rutland swore: that he had treated Shaw for tuberculosis

periodically for four or five years prior to November, 1920 (the time of his application), and diagnosed his case as tuberculosis, told him he had it, and that Shaw told him (Rutland) that he had been in a hospital in Atlanta, and that they had told him he had tuberculosis, and in his (Rutland's) opinion Shaw had that disease in 1917, 1918, 1919, and 1920. The doctor stated also that Shaw was an ordinarily intelligent man. Dr. Lane swore that he attended Shaw professionally a few times during a period covering two or three years prior to November, 1920, and that Shaw told him, about two years prior to 1921, that he had been told that he had tuberculosis, and he had been treated for it. Shaw also told the doctor that he had been taking cod-liver oil, and asked him if that was as good as he could do. Dr. Thomas reached Shaw a few minutes after he died, and, from the fact that " his remains showed a tall, thin, emaciated individual with hemorrhages," pronounced pulmonary hemorrhage from tuberculosis as the cause of his death. Shaw's wife and another non-expert witness, after giving sufficient facts to base their opinion upon, testified that in their opinion Shaw did not have tuberculosis.

The fact that a correct copy of the application is not attached to the policy " does not exclude an insurance company from showing that the policy was procured by fraud and misrepresentation." *Johnson* v. *American Life Insurance Co.,* 134 *Ga.* 802 (68 S. E. 732). And " representations contained in the application, if fraudulently made, may give the insurance company the right to avoid the policy." *Southern Life Insurance Co.* v. *Logan,* 9 *Ga. App.* 503 (3) (71 S. E. 742). " Any verbal or written representations of facts by the insured to induce the acceptance of the risk, if material, must be true, or the policy is void." Civil Code (1910), § 2480. " A material representation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of such acceptance." *Empire Life Ins. Co.* v. *Jones,* 14 *Ga. App.* 647 (2) (82 S. E. 62). " A failure to state a material fact, if not done fraudulently, does not void; but the wilful concealment of such a fact, which would enhance the risk, will void the policy." Section 2479 of the Civil Code provides that " Every application for insurance must be made in the ut-

most good faith, and the representations contained in such application are considered as covenanted to be true by the applicant. Any variation by which the nature, or extent, or character of the risk is changed will void the policy."

The application for insurance signed by Shaw stated that all the statements in parts A and C of the application were made by the insured to induce the company to issue the policy. Dr. Grant, the examining doctor, testified that he read over the questions in section C to Shaw, and wrote his answers down, and that Shaw signed it in his presence. Section C contained the questions and answers concerning Shaw's health, attendance by physicians, etc. Dr. Grant further swore, " If I had any intimation that he had tuberculosis, I think I would have examined him." Mr. Coan swore that he was " head man " for the defendant company in LaGrange, that he was thoroughly familiar with its business methods, that the application was the only basis upon which the company had to issue the policy, and that had the application contained the statement that Shaw was suffering from tuberculosis, or had said he had suffered with it, he (Coan) would not have sent it in.

Whether Shaw actually had tuberculosis it is not within our province to say. The preponderance of evidence indicates that he had. The uncontradicted evidence shows that Shaw had been attended by a physician who examined him, pronounced his case tuberculosis, told him so, and treated him for it. That Shaw had been treated for tuberculosis during the four or five years preceding the signing of his application would of itself surely be a fact that " would influence a prudent insurer in determining whether or not to accept the risk." The question in the application as to attending physicians was not an idle one. The company had the right to know the name of the physician who attended Shaw, and to have the opportunity to ascertain such facts as that knowledge would naturally lead to. It is inconceivable that Shaw could have forgotten his treatment for so serious a disease. He was ordinarily intelligent. Shaw's representation in his application, that he had not been under the care of any physician within two years prior to the date of his application, was fraudulent, material, and made to induce the acceptance of the risk. See, in this connection, *Life Insurance Co. of Virginia* v. *Pate,* 23

*Ga. App.* 232 (98 S. E. 874). The court erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*