26441. BANKERS HEALTH AND LIFE INSURANCE COMPANY *v.* HAMILTON.

DECIDED OCTOBER 27, 1937.

*Turpin & Lane, Lee W. Branch,* for plaintiff in error.

*Harrell & Lilly,* contra.

SUTTON, J. Robert W. Hamilton brought suit against The Bankers Health & Life Insurance Company on a policy of life insurance, dated February 20, 1933, issued on the life of the plaintiff's wife, Ida M. Hamilton. The insurance company defended by pleading fraud in the procurement of the policy, in that the written application contained false representations as to medical treatment of the insured during the five-year period previous to the issuance of the policy. The evidence was that the wife died on April 16, 1936; that in 1930 a Dr. Mayo was treating her for high blood pressure and giving her digitalis; that in 1931 the husband took her to a Dr. Smith who continued the digitalis and treated her at varying intervals; that her general health appeared to be good, and that she was under the care of Dr. Smith at the time the policy was issued and at the time the written application was taken. A daughter of the insured testified that she was present when the application was taken; that the agent of the company asked the insured who was her physician and was told; that he asked no further questions other than with reference to tuberculosis; that he appeared to be in a hurry, but that her mother signed the application and could read and write. The agent testified that he collected the premiums for three years and that the insured was apparently in good health. Dr. Smith testified that from April, 1931, to April, 1936, he treated the insured; that she was suffering from hypertension; that she continually made visits to his office, sometimes once a week and sometimes not more than once a month; that she gradually grew worse and died from angina pectoris brought on by hypertension. The policy was introduced in evidence, as well as the written application signed by Mrs. Hamilton under date of February 20, 1933. The application contained, among other things, the positive statement that she had had no medical or surgical attention in the last five years. There was also introduced in evidence proof of death, signed by Dr. L. A. Smith, showing the date of his attendance to have been from April 4, 1931, to April 6, 1936, for hypertension, and the cause of her death to have been primary angina

pectoris and secondary hypertension. The jury returned a verdict in favor of the plaintiff, and the exception is to the judgment of the court overruling the motion for new trial.

The question for determination is: Did the insured, in order to induce the insurer to issue her a policy of life insurance, wilfully, falsely, and fraudulently represent that she had not received any medical or surgical attention within the five-year period previous to the application for insurance?

It is not shown by the evidence whether the answers were in response to questions asked by the agent, whether she herself filled in the answers, or whether the agent filled them in and thereafter she signed the application. But the insurance company relies on the fact that such answers were contained in the written application and that she could read and write, and that her conduct was fraudulent and avoided the policy because the representations were false and material to the risk. "Under the act of August 17, 1906 (Acts 1906, p. 107), the application on which an insurance policy is based is not to be considered as part of the policy or contract between the parties, unless a copy thereof is attached to or accompanies the policy. Statements made in the application are not to be treated as warranties or covenants, on account of the failure or falsity of which the policy may be avoided, unless a copy of the application is attached to the policy or accompanies it, though representations contained in the application, if fraudulently made, may give to the insurance company the right to avoid the policy." *Southern Life Ins. Co.* v. *Logan,* 9 *Ga. App.* 503 (3) (71 S. E. 742); *Bankers Health &c. Ins. Co.* v. *Murray,* 22 *Ga. App.* 495 (1) (96 S. E. 347); *Wilkins* v. *National Life & Accident Ins. Co.,* 23 *Ga. App.* 191 (2) (97 S. E. 879); *Life Ins. Co. of Virginia* v. *Pate,* 23 *Ga. App.* 232 (97 S. E. 874); *Metropolitan Life Ins. Co.* v. *Shaw,* 30 *Ga. App.* 97 (117 S. E. 106); *Johnson* v. *American National Life Ins. Co.,* 134 *Ga.* 800, 803 (68 S. E. 731); *Supreme Lodge K. of P.* v. *Few,* 138 *Ga.* 778, 786 (76 S. E. 91); *Fraternal Life &c. Asso.* v. *Evans,* 140 *Ga.* 284, 288 (78 S. E. 915). The conduct of the insured must not only be fraudulent, but the representation must be false and material to the risk. "A material representation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of

such acceptance." *Life Ins. Co. of Virginia* v. *Pate,* supra; *Lee* v. *Metropolitan Life Ins. Co.,* 158 *Ga.* 517 (2) (123 S. E. 737). "Any verbal or written representation of facts by the insured to induce the acceptance of the risk, if material, must be true, or the policy shall be void." Code, § 56-821. "A failure to state a material fact, if not done fraudulently, shall not void the contract; but the wilful concealment of such a fact, which would enhance the risk, shall avoid the policy." Code, § 56-822.

Applying the above principles of law to the facts of the present case it is the opinion of the court that a jury question was presented as to whether or not the conduct of the insured was fraudulent. The application not being attached to and made a part of the contract, the representations could not be deemed warranties. On the question of fraud the evidence is consistent with her good faith. The daughter of the insured testified that the agent was apparently in a hurry, and after asking the name of the insured's physician and being told, and asking whether any member of the family had ever had tuberculosis, handed the application to the insured, she being able to read and write, and that she signed the same. While the evidence shows that she had been under medical treatment for five years or more, we think that the jury was authorized to find that she did not in fact know that she was afflicted with the disease of hypertension, which later resulted in angina pectoris and her death, and that she did not knowingly and fraudulently conceal or misrepresent her condition in making application for the policy of insurance. However, the evidence not showing that the company's refusal to pay was frivolous or without reasonable cause, and the question of liability being a close one under the law and the facts, the defendant was reasonably entitled to have the matter adjudicated without being subject to the charge of acting in bad faith, and, consequently, the award of attorney's fees and damages was unauthorized. If the plaintiff, when the remittitur from this court is made the judgment of the trial court, will write off from the judgment the amount of attorney's fees and the penalty, the judgment will be affirmed; otherwise, the judgment is reversed. *American National Insurance Co.* v. *Holbert,* 50 *Ga. App.* 527, 528 (2) (179 S. E. 219); *Sentinel Fire Ins. Co.* v. *McRoberts,* 50 *Ga. App.* 732 (6) (179 S. E. 256); *Life & Casualty Insurance Co.* v. *Smith,* 53 *Ga. App.* 838, 843 (187 S. E. 288).

The above represents the opinion of my two brethren, but in the view that I take of the case I am compelled to dissent. The undisputed evidence shows that the insured, during the five-year period previous to the application and the issuance of the policy of insurance, had been under treatment for hypertension, a very serious disease. It is further undisputed that such disease was the activating cause of her death from angina pectoris. The obvious purpose of her signing the application and delivering it to the agent was to induce the company to issue a policy of insurance. It could not be reasonably contended that she did not know of her disease. She had been under treatment for hypertension for five years or more, and to say that she did not know of its presence would require the belief that in all of her visits to the two doctors, and using digitalis, she was never once informed of her trouble. "Where it is shown that a material statement made in such application [for insurance] was false, that its falsity was known to the insured at the time it was made, that it was made with a view to procuring the insurance, that the company had no notice of its falsity, and that the company acted upon it to its injury, the law will conclusively presume an intent to deceive, and a case of actual fraud will be made out, although the insured may not have really intended to prejudice the rights of the company." *Northwestern Life Ins. Co.* v. *Montgomery,* 116 *Ga.* 799 (2) (43 S. E. 79). There was no evidence in the present case which, in my opinion, overcame the presumption, under the facts of the case, of an intention to deceive.

Not only did the insured conceal the fact that she had been treated for hypertension, but to the question, "What medical or surgical attention have you had in the last five years?" she answered "None." Even assuming that the answer was written in by the agent, it is not shown that he was aware of her ailment or was in any wise winking at the truth; and can an adult person, fully competent, able to read and write, free from any compulsion by the agent, be allowed to shut his eyes to the import of the question and answer and indifferently sign the application, and yet the company be liable on a policy which it has issued in reliance on the truth of such representations? To permit such would be to open the doors to unconscionable fraud and injustice. Being subtle and artful, fraud is the particular enemy of the law, and

its countenance and artifices are held up to view in many sections of our Code. "Fraud may not be presumed, but, being in itself subtle, slight circumstances may be sufficient to carry conviction of its existence. Code, § 37-706." "A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood." Code, § 105-302. "Misrepresentation of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitutes legal fraud." Code, § 37-703. "Suppression of a fact material to be known, and which the party is under an obligation to communicate, constitutes fraud." Code, § 37-704. Nor could it be said that the representation in the present case was not material to the risk. The company would hardly have entered into a contract of insurance if it had known that the applicant was suffering from hypertension. Even in the case of headaches it has been said: "It would seem that in some cases a mere headache would be a negligible matter; but the insured in this case had been treated for other sickness than that of a mere headache. If she had had merely headaches and had been treated for those headaches by a physician, the insurance company should have been informed of the fact by a truthful answer to the question contained in her application. A misrepresentation as to whether the insured had been attended by a physician, whether for a headache or other ailment, was material, because the company would, upon being informed that she had been treated many times for headache, have had the right to investigate and to ascertain for itself how serious was the ailment for which she had been treated." *New York Life Insurance Co.* v. *Hollis,* 177 *Ga.* 805, 807 (171 S. E. 288). Whether a misrepresentation is material is ordinarily a question for the jury, but where the evidence excludes every reasonable inference except that it is material no issue is presented for determination by the jury. *Jefferson Standard Insurance Co.* v. *Henderson,* 37 *Ga. App.* 704 (14 S. E. 498); *Life Insurance Co. of Virginia* v. *Pate,* and *New York Life Insurance Co.* v. *Hollis,* supra. The evidence in the present case demanded a finding that the insured fraudulently and wilfully made false and material representations to obtain the policy of insurance. The court erred in not granting the motion for new trial.

It is urged by the defendant in error that as the agent was advised the name of the insured's doctor he could by proper investigation have ascertained all the facts of her disease; that for more than three years he collected premiums from her, and that it would be inequitable to allow the defendant to escape liability. There is nothing to show that the agent knew of the disease with which she was afflicted. Without such knowledge on his part the insurer can not be held to a waiver merely because the agent could or should have known. *Interstate Life &c. Co.* v. *Bess,* 35 *Ga. App.* 723, 726 (3) (134 S. E. 804). The insured was apparently in good health, and the insurance company was entitled to collect the premiums in the absence of knowledge that the insured was suffering from hypertension.

*Judgment affirmed on condition. Stephens, P. J., and Felton, J., concur. Sutton, J., dissents.*