29301. NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY *v.* BOYD.

DECIDED MARCH 7, 1942.

*William F. Buchanan, J. Truett Brooksher,* for plaintiff in error. *J. Wilson Parker,* contra.

STEPHENS, P. J. Moses Boyd brought an action on an insurance policy against the National Life & Accident Insurance Company, alleging that he was the beneficiary of a life policy issued on May 1, 1939, on the life of Irene Boyd, who died on November 9, 1940, at which time the policy was in full force and effect; that the plaintiff furnished to the company the proofs of death which were accepted by the defendant without objection, and that a copy of the first page of the policy was attached to the petition. This exhibit provided that the name of the insured, the beneficiary, the entry age, the weekly premium, the sum insured, the date of issue "are

all stated in the schedule on the fourth page hereof, which page, together with pages two and three and any endorsements, either written or printed, as made by the company, are a part of this contract as fully as if recited over the signatures hereto."

The defendant filed an answer admitting the execution and delivery of the policy and receipt of premiums and proofs of death, but denying liability except for the return of the premiums paid by the deceased which were tendered into court. The specific ground for denying liability was that the policy was issued on the basis of certain written representations made by Irene Boyd in her application, which were relied on as true by the company; that among the questions asked and the answers given were the following: "Are you in good health?" which was answered "Yes." "What illness, injury, or accident have you ever had? Give details." This was answered: "1935, May, childbirth. Disabled two weeks. O. K. now;" that both answers were untrue and both statements were material to the risk; that Irene Boyd at that time was suffering from Bright's disease, heart trouble, and diabetes, and she knew that she had been suffering from diabetes for seven years before she applied for the policy, and had been treated for diabetes, heart trouble, and other serious diseases before applying for the policy, all of which was wilfully concealed from the defendant, and that these statements were material and untrue, and by reason thereof there was never any valid contract between the company and Irene Boyd. By an amendment the defendant, alleged that the applicant for the policy in her written application was asked the following question: "Have you ever had heart trouble, asthma, tuberculosis, ulcers, diabetes?" which question she answered "No;" that this answer was false because the applicant had been a chronic sufferer from diabetes for several years; had been treated for it and had taken a special diet, and well knew that she was afflicted with this disease; that this answer was not only false but was material to the risk; that the company acted upon it, and its falsity was not known to the company until after her death.

The jury found for the plaintiff for the face value of the policy besides interest. The defendant made a motion for new trial on the general grounds, which was amended by adding several special grounds. The motion was overruled, and the defendant excepted, assigning error on each and every ground.

■ As to the general grounds of the motion, the evidence did not demand a verdict for the defendant. It appears that on November 29, 1932, Irene Boyd was admitted to the colored clinical ward of Grady Hospital. Dr. Hackney made an examination and prescribed for her, finding that she was a large woman, had shortness of breath and high blood pressure. She was put on a strict diet, stayed in the hospital two days, and was dismissed with a diagnosis of hypertension, arteriosclerosis, and mild diabetes which could be controlled by treatment. "This heart was a murmuring heart; had a loud murmur." She was told what she was suffering from, and was advised of the diet and exercise for disease. She was told in the ward. That is regular routine. She was told that she had heart disease. On cross-examination Dr. Hackney said: "I am willing to testify that she was there and that she had heart trouble. I wouldn't swear that I told her. That is nine years ago." On redirect examination he said: "It has always been my policy to tell the patient what is the matter with them and what she had to do, but the man asked me the point question would I be able to swear to that; I couldn't swear that, but it was my usual routine." A witness for the plaintiff testified that after Irene came home from Grady Hospital she told the witness that the doctor said that "her heart was bad." There might be a distinction between a doctor telling his patient that "her heart was bad" and telling her that she had heart disease and other ailments. Whether or not the doctor was corroborated, and to what extent, by the statement of the deceased as to what the doctor told her, was a question for the jury. There are several significant facts which distinguish the present case from cases cited for the plaintiff in error. In the present case the deceased was at the hospital in 1932. It does not appear that she ever went back to the hospital except for childbirth in 1935. After the lapse of six and one-half years after her hospital treatment she applied for and got the policy sued on, and she lived for eighteen months thereafter. She died November 5, 1940, and the attending physician certified as the cause of death apoplexy, which he said is a bursting of a blood vessel in the brain caused by hypertension or extremely high blood pressure, and that at the last "she had atheroma of the vessels, and her heart was wrong too. As I recall the case the heart was enlarged, swollen, the heart was wrong. She had a bad heart towards the

last. Couldn't even sit up; couldn't rest at night;" and that he had begun treating her in April, 1940. From 1932 until 1940 it does not appear that the deceased had any hospital or medical treatment except for pregnancy. The deceased was an illiterate colored woman. She was hard-working and active, and enjoying good health during the time between her two-day stay at Grady Hospital in 1932 and the spring of 1940. Under these circumstances the question whether the deceased wilfully and fraudulently procured the policy by a representation which was known by her to be false, was a question for the jury.

■ It is complained that the court instructed the jury that in order to defeat the plaintiff's right to recover they must believe that the statements set out in the answer were actually made; that they were material and untrue, and known to be untrue by the applicant for insurance at the time they were made, and that such statements were made by the applicant fraudulently and for the purpose of fraudulently inducing the company to issue the policy. In the present case the application was not attached to the policy, and therefore the statements therein were not warranted to be true but constituted representations, and could avail the defendant as a ground for avoiding the policy only by proving that they were made with a fraudulent intent. Under the decisions in *National Life &c. Insurance Co.* v. *McKenney*, 52 *Ga. App.* 466 (183 S. E. 659), *National Life &c. Insurance Co.* v. *Williams*, 53 *Ga. App.* 677 (187 S. E. 145), *Johnson* v. *American National Life Insurance Co.*, 134 *Ga.* 800 (68 S. E. 731), and *National Life &c. Insurance Co.* v. *Lee*, 46 *Ga. App.* 4 (166 S. E. 253), this instruction was not erroneous, especially as it was qualified by a later instruction which is mentioned below.

■ The instruction just considered is made the subject of another exception to the charge in connection with the following instruction: "A case of actual fraud must be presented here in order to void this policy. But in that connection I instruct you where it is shown that a material statement made in an application for insurance was false, that its falsity was known to the insured at the time it was made, that it was made with the view of procuring the insurance, that the company had no notice of its falsity and that the company acted upon it to its injury, the law will conclusively presume an intent to deceive, and a case of actual

fraud will be made out, although the insured may not have really intended to prejudice the rights of the company." The complaint against these instructions is that they were confusing and misleading. The instruction just quoted is taken from *Mutual Benefit Health &c. Asso.* v. *Marsh,* 60 *Ga. App.* 431 (4 S. E. 2d, 84). It can not well be contended that the latter instruction which is quoted was unfavorable to the company, and the complaint that it was confusing and misleading is not sustainable. It is also complained that the court should have concluded this instruction with a statement that the defendant would not be liable. It will be noted that the instruction begins with the language that an actual fraud must be presented in order to avoid the policy, and concludes with the language that a case of actual fraud will be made out, although the insured may not have really intended to prejudice the right of the company. The jury is supposed to have ordinary intelligence. The law requires this, and an ordinarily intelligent man would understand in connection with the rest of the charge that if there were actual fraud in procuring the policy the company would not be liable. What is here ruled is not in conflict with the ruling in *National Life &c. Insurance Co.* v. *Fischel,* 62 *Ga. App.* 645 (9 S. E. 2d, 192), because in the *Fischel* case there was no instruction to the jury such as appears in the present case in the excerpt from the charge quoted above.

■ Another ground complains that the court erred in refusing to give a written instruction to the effect that when an applicant for life insurance is asked the question "what illness, injury or accident have you ever had?" it is incumbent upon such applicant to fully disclose any and all information as to any previous illness, any medical treatment, and all facts which would disclose fully his past and present condition as to health or illness; and that a failure to do so would invalidate a policy issued on the basis of such application if the company had no other information as to any such illness or medical treatment, and in such case the plaintiff would not be entitled to recover. This instruction does not conform to the law. It is too broad. It embraces not only the facts which were in issue in the case on trial and contains no reference to the question of fraud in procuring the policy, but also any other facts concerning the illness or health of the applicant whether pleaded as a defense or not. Furthermore, it does not contain any refer-

ence to the question of fraud. After the evidence was all in the case had been reduced to the questions of misrepresentation as to the existence of heart disease, the knowledge of the applicant of being so afflicted, and the fraudulent intent at the time the policy was applied for and accepted. It was not error to refuse this requested instruction.

The court did not err in overruling the motion for new trial.

*Judgment affirmed. Sutton and Felton, JJ., concur.*