18754. LIFE INSURANCE COMPANY OF GEORGIA *v.* LAWLER.

Argued November 9, 1954—Decided December 2, 1954.

J. Lon Duckworth, Jason B. Gilliland, John W. Davis, Charles T. Culbert, for plaintiff in error.

Robert L. Royal, E. J. Clower, contra.

CANDLER, Justice. On April 24, 1950, Life Insurance Company of Georgia issued a policy of insurance on the life of Albert LaFayette Lawler. Mrs. Lillian L. Lawler, the insured's wife, was the beneficiary named therein. The policy lapsed for non-payment of premiums, and on November 24, 1951, Lawler applied in writing for its reinstatement. So far as it is material to a consideration of the questions presented to this court for decision, the company's printed form of application, which the insured used, called for the following information: "6. Name all symptoms, diseases or disorders for which you have consulted a physician or other practitioner during the last five years. Give dates and particulars. If none, so state." And "7. Have you ever had a surgical operation or been a patient in a hospital or sanitarium? If so, explain fully." To each of these questions he answered, "No." On the information which the applicant furnished, the insurer reinstated his policy on November 29, 1951; and he died on July 13, 1952, from a heart attack. After more than 60 days had elapsed since proofs of the insured's death were submitted to the insurer, the beneficiary brought suit on the policy. The defendant pleaded not indebted; and further, that the quoted representations which the insured made for the purpose of effecting a reinstatement of his policy were knowingly false; that, in consequence of the incorrect information which the insured gave, it was misled as to material facts respecting the risk; and that the insured's false and fraudulent misrepresentations induced it to reinstate his policy, which it would not have done had it been correctly apprised of his physical condition. With the filing of its answer, the defendant paid into the registry of the court $116.50, an amount equal to the premiums which the insured had paid to it; also, a consent for its withdrawal at any time by the plaintiff.

On the trial, the defendant's counsel admitted execution of the policy, that it was reinstated on November 29, 1951, that proper proofs of death were duly filed, that demand for payment of the policy was made by the beneficiary, and that the defendant had refused to pay the amount stated in the policy. Dr. T. H. Moss testified for the plaintiff that, during March, 1951, he saw and talked to the insured in a professional capacity; that the insured was then having severe pain in his epigastrium and

in his stomach region; and that, because of its ulcerated condition, he removed by surgical operation about four-fifths of the insured's stomach on March 19, 1951. Guy Johnson, Harry Bond, and Tom Teat testified for the plaintiff, that the insured was a man of good character. S. R. Parris, testified for the defendant that he had worked for the insurer since 1947; that he filled out the insured's application for the reinstatement of his lapsed policy; that he specifically asked the insured to answer questions 6 and 7 of the application; that he correctly put down the answer to each of those questions; and that, after the application was fully filled out, the applicant read it and then signed it. There was no evidence showing or tending to show that the defendant had any knowledge of the falsity of the information imparted by the insured's reinstatement application until after his death. On motion therefor, a verdict for the defendant was directed by the court. On grounds which will be dealt with in the opinion, the plaintiff timely moved for a new trial, her amended motion for which was denied, and she sued out a writ of error to the Court of Appeals. That court reversed the trial court (*Lawler* v. *Life Insurance Co. of Ga.*, 90 *Ga. App.* 481, 83 S. E. 2d 281), and, on application therefor, we granted the writ of certiorari.

■ In the application to this court for the writ of certiorari, it is alleged that the Court of Appeals erred in holding: "In an action by a beneficiary on an insurance policy, where the company defends on the ground that the insured in an application for reinstatement of the policy answered certain questions falsely and fraudulently which materially affected the risk, evidence of the good character of the insured is alone sufficient to authorize a jury to find that no fraud was committed, even as against the uncontradicted testimony of an insurance agent as to facts which if true necessarily established the fraud." To clear the way for such a ruling, the Court of Appeals, by the concurring vote of five of its six judges, reviewed and overruled a decision holding to the contrary in *Henderson* v. *Jefferson Standard Life Insurance Co.*, 39 *Ga. App.* 609 (2) (147 S. E. 901), which was prepared for the Second Division of that Court by Judge Bell and in which Presiding Judge Jenkins and Judge Stephens concurred. In overruling the *Henderson* case—if, under section 2

of an act which the legislature passed in 1945 (Ga. L. 1945, p. 232), it could be legally reviewed and overruled by the concurrence of five judges when the other judge of that court was not participating because of his disqualification—and in making its own decision in the instant case, the Court of Appeals relied largely upon the rulings of this court in several criminal cases where evidence of the defendant's good character was introduced, and, also, upon the ruling of this court in *German-American Mutual Life Assn.* v. *Farley*, 102 *Ga.* 720 (29 S. E. 615). *Farley's* case, as we view it, affords no support for the overruling of *Henderson's* case or for the ruling here complained of. In the *Farley* case, as shown by the statement of facts preceding the opinion, the insured stated in his application for a policy that he had been rejected for insurance only by the Penn Mutual Life Insurance Company, and the defendant relied on the falsity of that representation for its defense; but, on the trial of the case, a general agent of the company testified that he filled out the insured's application, that he then personally knew the applicant had been rejected for insurance by several other companies, and that the insured did not represent to him that he had been rejected for insurance only by the company mentioned in his application. There was also undisputed evidence that the president of the company, about three months before the death of the insured, was told that he had been rejected for insurance by other companies when he made his application to it for insurance; and, notwithstanding this, the insurer accepted monthly premiums from the insured up to the date of his death. There, as in the instant case, testimony was introduced which showed the insured to be a person of good character. Farley, as executor of the insured's estate, recovered a judgment for the full amount of the policy, and this court in affirming the judgment said (at p. 742): "If these representations warranted to be true were any part of the inducement to the defendant to enter into its engagement, upon learning that they were false it should immediately have repudiated the contract and then offered to rescind. When it accepted the premiums with a knowledge that the representations were untrue, it elected to affirm the contract notwithstanding such untrue representations; and having received from [the insured] McArdle in his lifetime the money in satisfaction of

the instalments due, paid in pursuance of and in accordance with the contract of insurance, it is, after his death, estopped to deny the validity of the contract under which it received his money." But, in another division of the opinion in *Farley's* case, this court also said (at p. 745): "We think the issue in this case involved directly the character of the assured. He was charged with having perpetrated a gross fraud upon the insurance company. Evidence of his good character was admissible to rebut any inference unfavorable to him which might have been deduced from the evidence offered against him." That this statement as to the probative value which the jury may place upon good character evidence was purely obiter dictum, is clearly demonstrated by the testimony in *Farley's* case to which we have heretofore alluded. Estoppel by conduct, and not the sufficiency of good-character evidence alone to rebut positive and uncontradicted evidence of fraud, was the ground upon which this court affirmed the judgment in *Farley's* case. Hence, the case in hand is not controlled by the unanimous ruling of this court in *Farley's* suit on the policy of insurance there involved.

In *Northwestern Life Insurance Co.* v. *Montgomery*, 116 *Ga.* 799 (43 S. E. 79), where the facts are in all material respects like those in the instant case, this court by the concurring vote of all the Justices, except Justice Lumpkin, who was absent, reversed a judgment which the plaintiff had recovered against the defendant in an action on a policy of insurance. There, as here, the evidence of the insurer showed without contradiction that the insured obtained his policy in consequence of false and fraudulent representations as to facts material to the risk; and to rebut the evidence of actual fraud, the plaintiff relied solely upon proof that the applicant was a man of good character, and "not the kind of man to enter into a scheme to defraud an insurance company." Notwithstanding such proof of the insured's good character, this court in reversing that case, and in an opinion which Chief Justice Simmons prepared for the court, held that a verdict for the insurer was demanded by the evidence. While *Montgomery's* case is not a binding precedent, we nevertheless think it lays down a sound rule of law; and, being of that opinion, we will follow it in the instant case. And since

the decision in *Henderson's* case is in harmony with the ruling in *Montgomery's* case, the Court of Appeals should have followed it; as to that court, *Montgomery's* case is a binding precedent though not unanimous. Code (Ann.) § 2-3708. See *Moss* v. *Myers*, 12 *Ga. App.* 68 (1) (76 S. E. 768). While evidence of the insured's general good character is relevant and admissible in a suit on his policy of insurance, where the insurer defends on the ground that he perpetrated a fraud on it in procuring his policy (Code § 38-202), yet, in a case where such fraud is shown by witnesses who swear positively to facts sustaining the defense of fraud, the jury is not authorized to find from evidence of the insured's good character alone that the plaintiff has shown his right to recover by a preponderance of the evidence. In such a case, and just as the Court of Appeals held in *Henderson's* suit, "evidence as to the insured's character for honesty and integrity would not, as against the other evidence, be sufficient to make the question of his fraud in procuring the policy an issue of fact for determination by the jury so as to prevent the direction of a verdict in favor of the insurer upon such defense." In a civil case the plaintiff is only required to show his right to prevail by a preponderance of the evidence; but in a criminal case, where "a greater strength of mental conviction is held necessary to justify a verdict of guilty," the State must show the guilt of the accused to a moral and reasonable certainty and beyond a reasonable doubt. Code §§ 38-105, 38-110; *Addison* v. *State*, 198 *Ga.* 249 (31 S. E. 2d 393). In a criminal prosecution, where the accused enters upon the trial of his case with a legal presumption of innocence in his favor and introduces evidence of his general good character, the jury may conclude from it alone that the State has not overcome the presumption of his innocence or that the State has failed to show his guilt to a moral and reasonable certainty and beyond a reasonable doubt, though there be positive and uncontradicted testimony tending to show his guilt. *Shropshire* v. *State*, 81 *Ga.* 589 (8 S. E. 450). Therefore, since the burden of proof which rests upon the plaintiff in a civil suit is materially less than the burden which the State must carry in a penal prosecution, it necessarily follows that the several criminal cases which the Court of Appeals cited and relied upon as authority for its ruling are neither controlling in this case nor in point.

■ The Court of Appeals also held that "The [trial] court erred in admitting in evidence the testimony of a physician that a mole was sometimes a pre-cancerous type when there was no evidence that the insured had a mole." The petition for certiorari assigns error on this ruling. Respecting it, the record shows: The testimony complained of was given by Dr. T. H. Moss while being cross-examined by counsel for the defendant. To its admission, Mr. Clower, counsel for the plaintiff, made the following objcetion: "In view of the doctor's statement, we object to any further testimony of a speculative nature, in view of the fact that the examination shows this was non-cancerous tissue. As to what might or might not occur in other cases as to cancer." The Court: "I will sustain the objection. Mr. Duckworth, I will let you ask him as to what his diagnosis was as to this particular case." Mr. Duckworth: "That is all I am asking about, is this particular case." The Court: "I thought you were asking about pre-cancerous conditions that men develop and die from cancer or did not develop cancer. I will let you ask about this man." Mr. Clower: "We have no objection to this man. We want it restricted." Mr. Duckworth: "I did ask him whether or not a man might have a mole, not a cancer, but a pre-cancerous that might develop." Mr. Clower: "This is conjectural. This is not a mole involved in this case." The Court: "I will let him answer that question." Following this colloquy, the witness gave no further testimony with reference to a mole. Since there was no valid objection to the admission of the testimony complained of, nor a motion on any ground to rule it out of evidence, if it was in fact admitted, but only an objection "to any further testimony of a speculative nature," and since no such further testimony was offered, it necessarily follows that the trial judge did not err in refusing to grant the movant a new trial on this special ground of her motion. Hence the Court of Appeals erred in its ruling as to this.

For the reasons given in the two preceding divisions of this opinion, it follows that the judgment rendered by the Court of Appeals is erroneous.

*Judgment reversed. Justices Candler, Hawkins and Almand, and Judge Mallory C. Atkinson concur. Presiding Justice Wyatt and Justices Head and Mobley dissent. Chief Justice Duckworth disqualified.*

HEAD, Justice, dissenting. As I view this case, the opinion rendered by the Court of Appeals is based upon a theory which might have been in issue under the pleadings, but which was not the substantial issue under the evidence introduced.

The admissions of the defendant that it issued the policy, that the policy was reinstated after lapse for non-payment of premiums, and that premiums had been paid (which the defendant offered to refund to the beneficiary), were sufficient to make a prima facie case for the plaintiff. The defendant pleaded, however, that certain statements made in an application by the insured for reinstatement of the policy were false, material to the risk, and fraudulent, and that the defendant, "relying on the representations made in said application," reinstated the policy. Under the admissions made by the defendant and the allegations of defense, the burden was on the defendant (unless it otherwise appeared from the evidence) to prove not only that the statements made by the insured were false, but that they were material to the risk, and fraudulent, in that the defendant relied upon the false representations. *O'Connell* v. *Supreme Conclave Knights of Damon,* 102 *Ga.* 143 (2) (28 S. E. 282, 66 Am. St. R. 159); *Vaughn* v. *National Life &c. Ins. Co.,* 189 *Ga.* 121 (1) (5 S. E. 2d 238); *Metropolitan Life Ins. Co.* v. *Joye,* 77 *Ga. App.* 357, 361 (1) (48 S. E. 2d 751).

In Code § 56-904 (codified from Ga. L. 1906, p. 107), it is provided that no application for life insurance (when referred to in the policy) shall be received in evidence, either as a part of the policy of insurance, or as an independent contract, unless a correct copy of the application signed by the applicant is contained in, or attached to, the policy. In this case the application for reinstatement was not attached to the policy. It is not, therefore, to be regarded as a part of the contract. *Torbert* v. *Cherokee Insurance Co.,* 141 *Ga.* 773 (82 S. E. 134). This fact, however, would not prevent the defendant from pleading and proving that the insured made false statements, material to the risk, and that the statements were fraudulently made.

In *Bankers Health &c. Ins. Co.* v. *Hamilton,* 56 *Ga. App.* 569, 571 (193 S. E. 477), Judge Sutton, for the Court of Appeals, stated in the opinion: "The conduct of the insured must not only be fraudulent, but the representation must be false and material to

the risk." See also Code §§ 56-821, 56-822, 56-824; *Northwestern Life Ins. Co.* v. *Montgomery,* 116 *Ga.* 799 (2) (43 S. E. 79); *Johnson* v. *American National Life Ins. Co.,* 134 *Ga.* 800 (68 S. E. 731); *Guaranty Life Ins. Co.* v. *Johnson,* 60 *Ga. App.* 292, 294 (2) (3 S. E. 2d 773); *National Life &c. Ins. Co.* v. *Boyd,* 66 *Ga. App.* 722, 725 (19 S. E. 2d 210); *Progressive Life Ins. Co.* v. *Gazaway,* 67 *Ga. App.* 339 (20 S. E. 2d 189).

In the present case the only testimony offered by the defendant was that of its agent, who testified that he filled in the application for reinstatement of the policy, that the insured read it over, and signed it. Based on the uncontradicted testimony of Dr. T. H. Moss (a witness for the plaintiff), the jury would have been authorized, if not required, to find that the answers appearing in the application were false. Dr. Moss testified that the insured had a posterior gastric ulcer, and that by an operation he removed the affected area.

The establishment of one fact by uncontradicted testimony, the falsity of answers in the application, was insufficient to establish the affirmative defense offered by the defendant, that the answers appearing in the application were false, *material,* and *fraudulent.* Under the evidence and admissions of the defendant, it appears that the insured died of a heart condition. On the question as to whether or not the ulcer of the insured and the operation performed by Dr. Moss increased the risk, Dr. Moss testified: "As to whether I considered the operation successful or not, yes, I thought he did awfully well. As to whether he recovered, yes, I considered he was well. . . As to whether there was any causal connection between his death and the operation, I would not think there was. As to whether the operation shortened his life, I do not think so. I think it lengthened it. . . As to whether that man's health was not as stable and as good and substantial as a man who never had had an operation, I .can't answer that. . . As to whether he would have been better off if he had never had the ulcer, he would have been a better risk."

In *Brown* v. *Mutual Life Ins. Co. of New York,* 29 *Ga. App.* 794 (116 S. E. 559), it was said: "Statements made in an application for life insurance will not, if false, void the policy issued thereon unless they were material and operated to change the

nature or character of the risk. This materiality, when not indisputably established by the evidence, is a matter for determination by a jury."

Under the testimony of Dr. Moss, it was a question for jury determination whether or not the nature and character of the risk was materially changed by the ulcer and operation performed on the insured.

As to fraudulent representations, it must appear that they were acted upon by the defendant. The defendant failed to offer the testimony of any representative of the company that it acted on such false representations. *A misrepresentation not acted upon is never a ground for annulling a contract.* Code § 96-202. Having failed to establish its affirmative defense of fraud by any competent evidence, the defendant was not entitled to a directed verdict.

The second question considered by the Court of Appeals was not germane to a proper result and could not have been injurious to the plaintiff.

The question arises as to whether or not this court in reviewing the Court of Appeals could, and should, have considered the failure of the defendant to prove its affirmative defense. The writer is familiar with the requirements of Rule 45 of this court, to the effect that the application for certiorari must plainly specify "the decision complained of and the alleged errors." This court has said a number of times that it will consider only the assignments of error made in the petition for certiorari. Neither the statement contained in Rule 45, nor the line of decisions referred to, are controlling in granting certiorari, the object being "to do full and complete justice in the premises." (Court rule 45.)

The Constitution of 1945, art. VI, sec. II, par. IV (Code, Ann., § 2-3704) provides: "It shall also be competent for the Supreme Court to require by certiorari or otherwise any case to be certified to the Supreme Court from the Court of Appeals for review and determination with the same power and authority as if the case had been carried by writ of error to the Supreme Court." This provision of the Constitution of 1945 was added to the Constitution of 1877 by amendment in 1916.

The Constitution fixed the powers of the Supreme Court per-

taining to certiorari, and the court has held by full-bench decisions that it has "jurisdiction to rule upon the assignments of error in the bill of exceptions from the trial court." *Gulf Paving Co.* v. *City of Atlanta,* 149 *Ga.* 114 (99 S. E. 374); *Forbes* v. *Mayor &c. of Savannah,* 160 *Ga.* 701 (2) (128 S. E. 806). See also *Central of Ga. Ry. Co.* v. *Yesbik,* 146 *Ga.* 620 (91 S. E. 873).

Therefore, independently of the majority finding that "on the information which the applicant furnished, the insurer reinstated his policy on November 29, 1951" (which is itself a ruling purportedly on the evidence, and which shows the materiality of the evidence), this court has the power to determine the real issues in the case.

The judgment of the Court of Appeals was correct. It has long been the rule that a correct judgment should not be reversed because an incorrect reason may have been given for the judgment. *Central of Ga. Ry. Co.* v. *Yesbik,* 146 *Ga.* 769, 778 (92 S. E. 527). I therefore dissent from the judgment of reversal.

I am authorized to say that Presiding Justice Wyatt and Justice Mobley concur in this dissent.

WYATT, Presiding Justice, dissenting. I can not agree with the majority opinion in this case, and I concur in all that is said by Justice Head in his dissenting opinion.

I am further of the opinion that the ruling made by the majority opinion is erroneous for the reason that the law permits evidence of good character to be introduced under the circumstances appearing in this case. It is my opinion that, since the law does permit the introduction of this type of evidence, when it is introduced it certainly raises an issue that should be decided by a jury.