## WHEDON v. KNIGHT.

Where the trial judge, throughout the body of his charge, entirely ignored the main theory upon which the contentions of one of the parties were based, the error was not cured by giving briefly, in a single sentence at the conclusion of the charge, an instruction summarizing the principle relied upon by such party, whose counsel, at the conclusion of the charge, suggested the same to the court. Especially is this true when the theory thus ignored in the general charge was sustained by a decided preponderance of the evidence.

Lumpkin, P. J., and Fish, J., dissenting. 1. When, at the conclusion of a charge to a jury, counsel for a party undertake to obtain the correction of an error or omission by requesting an additional instruction, and the same is given in the very language of the request, such party has as to this matter no further right to complain.

2. There was sufficient evidence to warrant the verdict returned in the present case.

Argued November 5, 1900.—Decided January 26, 1901.

Probate of will — appeal. Before Judge Reagan. Pike superior court. May 25, 1900.

*J. S. Boynton, R. L. Berner,* and *M. W. Beck,* for plaintiff.
*J. F. Redding* and *R. T. Daniel,* for defendant.

Lewis, J. Mrs. Emma Whedon, of Louisville, Ky., filed with the ordinary of Pike county a petition for probate of the will of Lucy A. Seamans. This will was executed in Kentucky on October 23, 1894, and was duly probated there on August 15, 1895, and admitted to record according to the laws of Kentucky. Mrs. Whedon was nominated executrix of the will, and had qualified as such in the State of Kentucky. The testatrix owned certain property, both real and personal, in Pike county, Georgia; and the executrix filed a petition with the ordinary of Pike county, asking that the will be probated and admitted to record in his court, as provided in section 4 of the act of the General Assembly of Georgia approved December 17, 1894 (Acts 1894, p. 102), and that letters testamentary be granted to her. To this application Herbert A. Knight filed a caveat. It seems he was nominated executor of a will made by Lucy A. Seamans before she left Georgia for Kentucky. One ground of the caveat was that Lucy A. Seamans, at the time of the execution of said will, was incompetent to make a will, and did not at said time make a legal will that could be admitted to probate in the county of Pike, the pretended will not

being witnessed as provided by law. The caveat further denied that Lucy A. Seamans was a resident of Louisville, Ky., at the time of her death, but alleged that she was in Louisville, Ky., on a visit, and that her legal residence was in Pike county, Georgia. This case was appealed from the court of ordinary to the superior court of Pike county. In the latter court the caveat was demurred to by the propounder of the Kentucky will, upon the ground that the question in the caveat touching the capacity of the deceased to make a will was settled by the judgment of the court of Jefferson county, Ky., admitting the will to probate. The demurrer was sustained on this point. The real and only issue was whether or not the testatrix was a resident of Kentucky at the time she executed the will. It was insisted by the caveator that she had never changed her residence from Pike county, Ga. It was urged by the propounder that she had removed, and was, at the time of making the will and at the time of her death, a resident of Louisville, Ky. There was considerable conflict in the testimony as to the mental condition of testatrix when she left Georgia in company with Mrs. Whedon, who was her half-sister. Witnesses introduced for the caveator testified that she was in an imbecile condition, and other witnesses testified to her sanity and clearness of mind. A large preponderance of the evidence, however, of witnesses living in Kentucky, introduced in behalf of the propounder, was to the effect that her mind was clear while she remained in that State, and that she repeatedly asserted that she had made Kentucky her home. She resided in Louisville with her half-sister, the propounder, who was nominated as executrix of her will, for the remainder of her life, having lived eight months after accompanying her sister home. The jury returned a verdict for the caveator; whereupon the propounder made a motion for a new trial, and excepts to the judgment of the court overruling the same.

On the trial of this case there were quite a number of witnesses introduced on behalf of the propounder, all of whom testified to the perfect sanity of Mrs. Seamans during her whole stay of eight months in Kentucky, with the possible exception of the day before her death, when she became unconscious; that her mind was clear; that she was intelligent; and that she had repeatedly declared that Kentucky was her home and announced her intention to reside with her sister during the remainder of her life. It seems that, soon after reaching

that home, a physician of considerable reputation and prominence in Louisville was procured for her, and that he treated her up to the time of her death. This physician testified to her perfect sanity and intelligence during this whole time, except the day before her death, and to her frequent expressions, while in this state of mind, of satisfaction at the change she had made in her home. There was especially an abundance of evidence showing the sane and clear condition of her mind at the time of the execution of her will. The physician himself was one of the witnesses to the instrument, and stated that he read it over to her in the presence of the other witness; that she approved it, and when it was signed and fully executed she seemed contented and gratified. On the probate of this will before the proper court in Kentucky, it appears that proof was introduced of the sane condition of the testatrix and the proper execution of the will, which was there admitted to record. This testimony touching her mental condition and her purpose to change her residence from Georgia to Kentucky was practically without contradiction. There were two women who acted as her nurses in Louisville, one of whom testified consistently to the sane condition of Mrs. Seamans during her lifetime in Kentucky, and to her perfect satisfaction with that as her home. The other nurse, by interrogatories, answered in effect that her mind was not at all times sound, but that she had lucid intervals when she would be perfectly clear, and she further testified that Mrs. Seamans had expressed a desire to live in Macon, Georgia. An affidavit made by this same witness was introduced in reply to these interrogatories, and the testimony of the officer who took her depositions, that she dictated, in substance, the contents of the affidavit to him. In that affidavit she swore that the testatrix was at all times perfectly sane and rational and gave no intimation whatever that she did not desire Kentucky as her home. The testimony that she wished her home in Macon was in conflict with all the evidence on the subject in behalf of caveators, it being undisputed that Milner, Pike county, was last her home when she left Georgia, and it not being pretended that she then resided in Macon.

After a careful review of this case, we discover that the court failed to give, in the body of the charge, any instructions with reference to Mrs. Seamans's manifesting a purpose or intention to change her residence to the domicile of her sister after going to her home in Louisville. We fail to find in the record any evidence

tending to show that, while the testatrix was in Louisville, she was not perfectly capable of forming an intention to change her domicile. The evidence certainly authorizes, if it does not require, the inference that during her entire stay there her mind was clear, strong, and well-balanced, and the further inference that by her acts while in Kentucky she had in fact changed her domicile to that State. In further corroboration of that purpose was the fact that she remained there the rest of her life, and there is no reliable evidence that she ever altered her intention or expressed a desire to move back to Georgia. The propounder's theory of the case is based mainly upon this branch of the testimony.

One ground in the motion for a new trial is, that the court erred in failing to charge the jury, as part of the general charge, "that if Mrs. Seamans, the testatrix, went to Kentucky on a visit, and after her arrival there decided to make that her domicile, and there so expressed her intention to make Kentucky her home or domicile, then that would have made her a resident of Kentucky, provided she had sufficient mental capacity to form an intention of changing her residence." Complaint is also made that in his general charge the judge specially instructed the jury as follows: "I charge you that, in order to constitute a change of domicile in this case, the evidence must show that Mrs. Seamans changed her residence, that is, removed from Georgia to Kentucky, with the avowed intention of making the latter place her home or her domicile. By avowed intention I mean that it was her express intention or declaration on her part,—that it was her purpose and intention to make that her home or constitute that her domicile. If you believe from the evidence that she did this, it is your duty to find for the propounder. If you believe that she did not, then find for the caveators." We have carefully read the entire charge of the court, and in the general charge the jury was really limited to the single issue as to whether or not the testatrix left Georgia with mind sufficient to change her residence, and whether or not it was her declared intention to change it before she left this State. As above indicated, there was conflict in the testimony on this point. On the other point, as to whether, after leaving Georgia, she had while in Kentucky, and knowing what she did, resolved to live with her sister in Louisville, the evidence was overwhelming, and nothing related by the witnesses in Georgia was in conflict with the positive and direct

testimony of the witnesses for the propounder, who resided in Kentucky. It is true that after the judge finished his general charge, confining the issue for the jury to pass upon entirely to the issue relied upon by the caveator, he did, at the request of propounder's counsel, charge as follows: "If you believe from the evidence that Mrs. Seamans went to Kentucky, and it was her avowed purpose, her expressed intention, to make that her home, or if she went there on a visit, and, after she arrived there, if she then decided to make that her domicile and there so expressed her avowal of intention to make it her residence, then that would constitute a good change of residence, provided you believe from the evidence she had sufficient mental capacity to form an intention of changing her residence." That single sentence in conclusion, and at the request of counsel for propounder, was in direct conflict with the instructions that the court had given the jury in the general charge; and when we consider the preponderance sustaining the propounder's theory as to what intention Mrs. Seamans really formed after making her sister's home her domicile and after being so well and affectionately cared for during the remainder of her life, we do not think the correction at the end of the charge sufficient to cure the error already committed, no explanation being given of the contradiction between the instructions given in the body of the charge and those given at the end of the charge.

After a careful review of the testimony, we are convinced that a very weak and unsatisfactory case in support of this verdict was made out. Giving the correct theory of the propounder upon the request of her counsel at the conclusion of the charge and in a single sentence, without explaining the manifest contradiction between it and what had been stated several times in the course of the general charge, was clearly not treating the propounder fairly. As Chief Justice Simmons said in the case of *Seymour* v. *State*, 102 *Ga.* 806: "In view, therefore, of the fact that the main defense relied upon was not presented to the jury at the proper time and in proper connection, and being apprehensive that, for this reason, the jury may not have given the evidence tending to show the good character of the accused the full weight and consideration it was entitled to receive, we feel constrained to order a new trial." See also the opinion of Presiding Justice Lumpkin in the case of *Smith* v. *State*, 109 *Ga.* 484. We think the principle advocated and dis-

cussed in that case has direct application to the facts in the case before us. It seems that in that case the accused set up the defense that the homicide was accidental. The jury was given an elaborate charge, every word of which was adapted to an intentional killing. Just as the judge was about to finish, he told the jury in a single sentence that if the killing was accidental, the accused would not be guilty of any offense, and added: " I see I have got that noted here, but in my charge I did not think to call your attention to it." Says the Justice in his opinion: " This was almost saying to the jury that the judge thought there was very little in the defendant's contention that the killing was the result of an accident." See also the case of *Central R. R.* v. *Harris*, 76 *Ga.* 511, where the principle is laid down by Jackson, C. J., that the law of the case must be given the jury to the extent of covering the substantial issues made by the evidence, whether requested or not, or attention be called to it or not; otherwise the verdict will be set aside. See the authorities cited in that opinion.

*Judgment reversed. All the Justices concurring, except*

LUMPKIN, P. J., and FISH, J., dissenting. 1. Unquestionably the charge of the court, before the addition requested by counsel for the propoundor was made thereto, was open to serious objection. We fully agree with the majority that the judge ought to have instructed the jury, that though Mrs. Seamans may have gone to Kentucky on a visit with no intention of making her home in that State, yet if after arriving there she decided to change her residence from Georgia to Kentucky, that would have made her a resident of the latter State, if she had sufficient mental capacity to form an intention of changing her domicile. In the absence of such an instruction, the original charge was erroneous and incomplete. The record, however, discloses that " the court did, after finishing the general instructions and after instructing the jury as to the form of their verdict, at request of movant's counsel then made," charge in the words set forth in the opinion of Mr. Justice Lewis. It will thus be perceived that counsel for the propounder, seeing that the charge as given needed correction, undertook to obtain the same by preferring to the court a request to instruct the jury in specific language. This request was complied with literally, and it would therefore seem that the propounder has no further just cause of complaint with respect to this matter. As

her counsel selected the very words which in their opinion the judge ought to use in order to make his charge fair and complete, their client ought not to thereafter be heard to complain that the court should have corrected the original error and omission in its charge by using other language. As the court gave her counsel all they asked, she should be content. It does not appear either in the case of *Seymour* v. *State* or that of *Smith* v. *State,* cited by Mr. Justice Lewis, that counsel undertook to frame the additional instruction which they desired should be given the jury at the conclusion of the general charge; and in the latter case the judgment was reversed mainly because in giving the added instruction the court practically told the jury that the contention to which it related was not a matter of much consequence.

2. After a careful examination of the brief of evidence, we are of the opinion that there was sufficient testimony to warrant the verdict. This being so, and the judge having committed no error which was not, in our opinion, duly corrected, we think the judgment should be affirmed.