## 23570. BANKERS HEALTH AND LIFE INSURANCE COMPANY v. BROWN.

DECIDED JUNE 26, 1934.

*Shelby Myrick, Turpin & Lane,* for plaintiff in error.
*Conneral & Hunter,* contra.

MacINTYRE, J.   Martha Brown brought an action against the Bankers Health and Life Insurance Company, on a policy of life insurance issued by said company, to recover $200, the amount of insurance carried, $50 damages, and $50 attorneys' fees.   The jury returned a verdict against the defendant for $200 and $50 attorneys' fees.   The exception is to the judgment overruling the insurer's motion for a new trial.

In its answer the defendant admitted the execution of the policy declared upon and the payment of all the premiums due thereon. The defendant pleaded that in replying to certain questions propounded to him in his application for insurance, Joe Harris, the insured, made statements which were false and fraudulent, material to the risk, unknown to the insurer, and which made the contract of insurance null and void.   Said statements were (*a*) that he was a carpenter, (*b*) that he was earning $5 a week, and (*c*) that he was employed.   The plea avers that these answers were false and fraudulent because "at said time, and for some time prior thereto, the said Joe Harris was a convict on the chain-gang of Chatham county, Georgia."

The first special ground is merely an elaboration of the general grounds, which will be considered later.

The second special ground avers that that part of the verdict and judgment which awards the plaintiff $50 attorneys' fees is not supported by the evidence.   Attorneys' fees are awarded in a case like this one when the refusal of the insurer to pay is "in bad faith." Civil Code (1910), § 2549.   "Bad faith" means "any frivolous or unfounded refusal in law or in fact to comply with the requisition of the policyholder to pay according to the terms of his contract and the conditions imposed by statute." *Cotton States Life Ins.*

*Co.* v. *Edwards,* 74 *Ga.* 220 (4). Under the facts of this case, the question of the liability of the insurer was a close one, and we see nothing in the record to indicate that the insurer's refusal to pay was in bad faith. See *N. Y. Life Ins. Co.* v. *Tarbutton,* 45 *Ga. App.* 97 (2), 100; *Globe Ins. Co.* v. *Poolas,* 36 *Ga. App.* 767 (2) (138 S. E. 366); *Continental Ins. Co.* v. *Wells,* 38 *Ga. App.* 99 (142 S. E. 900); *So. Ins. Co.* v. *Ray,* 40 *Ga. App.* 262 (149 S. E. 304). It follows that the part of the verdict awarding attorneys' fees is not supported by the evidence.

In the third special ground it is averred that the "court erred in submitting to the jury the question of the materiality of the misrepresentations of Joe Harris to the effect that he was a carpenter, was earning $5 a week, and was employed at the time he signed the application for insurance," and the question "as to whether or not the insured, Joe Harris, made the alleged misrepresentations." The basis of these contentions is the following charge of the court: "You inquire first, and determine, whether or not the evidence shows that this application was made while he was on the Brown farm. If it was, then you will ascertain whether or not it was material, and . . a material representation is one that would influence a prudent insurer in determining whether or not to accept a risk or to fix, in some cases, the premiums, in the event of such acceptance. Now, then, if it has been established by the evidence that this application was signed—made—while this man was on the chain-gang, and that the man receiving the application did not know the fact that he was on the chain-gang, if he was there, would have influenced him not to accept the policy—not to accept the risk and issue the policy,—then the company would be excused from paying on that particular ground." It is urged in the ground that this charge is erroneous (*a*) "because the evidence showed without contradiction that the misrepresentations were made by Joe Harris with reference to his being employed as a carpenter at the rate of $5 a week, and as to his being employed at that time in the above capacity," and (*b*) because "the evidence showed without contradiction that the misrepresentations were material to the risk."

It occurs to us that the charge complained of submitted to the jury the question as to the time when the alleged false misrepresentations were made rather than the fact of their being made. The evidence shows conclusively that the insured had been sen-

tenced to serve a term on the chain-gang which covered the time when the application for insurance was made, and tends strongly to show that he was a "trusty" at that time. However, the evidence does show that when the application was made the insured was at the home of the beneficiary and did not have on a prison uniform. We hold that the court did not err "in submitting to the jury the question as to whether or not the insured . . made the alleged misrepresentations." We think also that the court properly submitted to the jury the question of the materiality of the answers made in his application for insurance. "A material representation in an application for life insurance is ' one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of such acceptance.'" *Lee* v. *Metropolitan Life Ins. Co.*, 158 *Ga.* 517 (2) (122 S. E. 737). This rule is approved by accredited text-writers, and followed by both of the appellate courts of this State, and further citation of authority thereon would be useless. "The truth and materiality of representations are generally questions of fact, for determination by the jury; but where all the testimony relating to a question of fact excludes every reasonable inference but one, the issue becomes an issue of law, for determination by the court." *Empire Life Ins. Co.* v. *Jones,* 14 *Ga.. App.* 647 (3) (82 S. E. 62) ; *N. Y. Life Ins. Co.* v. *Hollis,* 177 *Ga.* 805, 807 (171 S. E. 288) ; *Jefferson Standard Ins. Co.* v. *Henderson,* 37 *Ga. App.* 704 (141 S. E. 498). Most of the Georgia cases in which it has been held that the materiality of the representation is not a jury question have reference to instances where it appeared conclusively that the insured was afflicted with an incurable disease, or where he stated falsely that he had not been attended by any physician. We know of no case in this State where it has been held as a matter of law that answers like those in the instant case are material. It is true that the insurer produced evidence that an answer to the effect that an applicant for insurance was not in jail, when as a matter of fact he was in jail, or was a "trusty," is a material representation, and that the policy would not have been issued had the insurer been aware of the untruthfulness of such representation. However, "this materiality, when not indisputably established by the evidence, is a matter for determination by a jury" (*Brown* v. *Mutual Life Ins. Co.,* 29 *Ga. App.* 794, 116 S. E. 559,

*Life & Casualty Ins. Co.* v. *Burkett,* 38 *Ga. App.* 328, 336, 144 S. E. 29), and a material representation is one which would influence "a prudent insurer," and we do not think that the testimony of the defendant's witnesses was necessarily conclusive as to whether the alleged falsity of the answers of the insured in this case would have influenced a "prudent insurer." We hold that this ground discloses no reversible error.

It is insisted in special ground 4 that the court erred "in submitting to the jury the question as to whether or not the insured . . was in good health at the time he signed the application for insurance, and at the date of the delivery of the policy." It appears from the ground that the court charged: "Now, they claim . . that at the time this policy was issued under that application, the insurer was afflicted with cancer, and that being the case, and the policy not having been received by him while he was in a condition of good health and with the first premium paid, that this policy is null and void." It is insisted that "the error in said charge was that the plaintiff's evidence . . showed that at the time of the application for insurance . . , and at the date of the delivery of the policy, and for a period of time prior thereto, the insured, Joe Harris, was afflicted with cancer and/or was not in good health."

There is some controversy as to when the applicant signed his completed application for insurance, but, to our minds, the evidence fairly shows that the application was made on September 3, 1931. The policy of insurance is dated September 14, 1931. It appears from the attending physician's death certificate that the insured died of cancer on July 9, 1932. We quote as follows from that certificate: "Date of attendance February 27, 1932; disease operation for retropentoneal sarcoma. I did not prescribe for disease prior to last illness." "How long had the deceased been ill when you were called to attend?" "Six months." "Deceased was never treated by a physician or at a hospital or institution prior to my attendance. I hereby certify that I attended the deceased from February, 1932, to July, 1932." Counsel for the insurer insist that if the insured "had been ill" six months when the doctor first attended him, it necessarily follows that he was sick when the application for insurance was made. Counsel for the beneficiary contend that since the doctor states that the insured had

never been treated by a physician prior to the time he attended him, and that he did not prescribe for the deceased prior to his last illness, the only reasonable construction of the certificate is that the attending physician meant to say that the insured had been ill from February to July. This controversy we shall not attempt to settle. Martha Brown, the beneficiary, at whose house the insured was when his application was taken, testified in part: "After his illness and operation in February he lived with me. I nursed him and cared for him. Before that in August, 1931, he was a well man. They say he died from cancer that he had. He had been cut in the side, and that cutting was an operation from which he never got well. . . Of course I do not know when the cancer started." C. C. Crook testified in part: "I knew when Joe Harris went on the chain-gang. At that time his health appeared to be good. . . When he first went to the farm I saw him from time to time working around Montgomery. He did exactly the work the other men did. As far as I could tell on seeing him, I did not have any reason to think that he had cancer or any other serious illness. . . When he did become ill, it was very sudden, and they had to send him to the Georgia Infirmary."

Irrespective of the other evidence in the case, we think that the testimony of the beneficiary that the insured was "a well man" in August, 1931, coupled with the testimony of Mr. Crook, made an issue as to whether or not the insured was in good health when the application was made and the policy delivered. We therefore hold that the court did not commit reversible error in submitting that question to the jury. In this connection we will state that we can not hold as a matter of law that the fact that the insured had a cancer in February, 1932, shows conclusively that he had it when the application for insurance was taken some five months previously, or when the policy was delivered.

Special ground 5 avers that the court erred in charging the jury as follows: "A failure to state a material fact, if not done fraudulently, does not void; but the wilful concealment of such fact, which would enhance the risk, will void the policy." Counsel insist that "it was not relevant or material to the facts of this particular case, the correct rule of law applying in this case being, that if the insured failed to state material facts in his application, it would void the policy, even though such failure was not done fraudulently and

not done wilfully." It is further insisted that this part of the charge was in conflict with other portions of the charge, and was misleading and confusing. The charge complained of is in the language of the Civil Code (1910), § 2481, and is abstractly correct. We are not certain that the charge is not applicable to the defense that the insured had a cancer when the application was made and the policy delivered; but, be this as it may, we hold that when the charge is considered as a whole, it can not be fairly concluded that the assignment of error under consideration is good.

Though the evidence is in sharp conflict, we are of the opinion that it supports the verdict, except as to the recovery of attorneys' fees. If, when the remittitur from this court is made the judgment of the trial court, the plaintiff will write off from the verdict and judgment the attorneys' fees awarded, the judgment will be affirmed; otherwise it will be reversed. The cost of bringing the writ of error to this court is taxed against the defendant in error.

*Judgment affirmed on condition. Guerry, J., concurs.*

BROYLES, C. J., dissenting. The undisputed evidence was that when the policy of insurance was issued, the insured was in the "chain-gang;" that this material fact was not known to the agents of the insurance company, and that, if they had known it, the policy would not have been issued. The undisputed evidence further showed that the insured was in the "chain-gang" when he signed the application for the insurance and made the misrepresentations set forth in the opinion of the majority of the court, and that the agents of the company were not aware of the falseness of the representations. As said by this court: "The truth and materiality of representations are generally questions of fact, for determination by the jury; but where all the testimony relating to a question of fact excludes every reasonable inference but one, the issue becomes an issue of law, for determination by the court." *Empire Life Ins. Co.* v. *Jones,* 14 *Ga. App.* 647 (3) (supra) ; *Lee* v. *Metropolitan Life Ins. Co.,* 158 *Ga.* 517 (supra). In my opinion, under the evidence set forth in the record, there was no issue of fact as to the insured being in the "chain-gang" when he made the application for the insurance, and no issue of fact as to the truth and materiality of his representations. I think that the trial judge erred in submitting those questions to the jury, and thereafter in refusing to grant a new trial.