1. The evidence was sufficient to authorize a verdict in favor of the plaintiff; and the jury having found generally in favor of the defendants, it is necessary to pass upon the special grounds of the motion for new trial, in which it is contended that certain errors were committed.
2. There was some evidence to support the plaintiff's contention that the administration of her father's estate was fraudulent in that the two defendants who so administered obtained their appointment as administrators by falsely representing to the ordinary that they had been selected in writing by a majority of the next of kin, and afterwards withheld property that ought to have been administered. The court erred in failing to instruct the jury as to such issue.
3. The plaintiff relied in part on fraud and in part on undue influence. The court erred in charging the jury in such manner as was calculated to indicate to them that the plaintiff had the burden of showing both fraud and undue influence in order to recover.
4. The court charged the jury as follows: "Slight evidence of fraud and undue influence may authorize the jury to cancel the deeds, and is *Page 794 
sufficient to shift the burden to the defendants and require them to show that the transaction was fair and free from fraud and undue influence; but before that burden shifts to the defendants you must believe that sufficient fraud has been shown to you to justify investigation into the merits of the transaction." The plaintiff's complaint is that this charge was confusing as to what was meant by burden of proof, especially in view of the last clause, "but before that burden shifts to the defendants you must believe that sufficient fraud has been shown to you to justify investigation into the merits of the transaction." This exception is well taken.
5. None of the remaining assignments of error show cause for reversal, under the evidence presented by the record. For the reasons indicated in notes 2, 3, and 4 above, it was error to refuse a new trial.
 No. 13450. MARCH 19, 1941. REHEARING DENIED APRIL 3, 1941.
Mrs. Eloise Baker Daniel filed a suit in equity against J. Lee Etheredge, Mrs. Essie Baker Etheredge, J. Lee Etheredge Jr., Miss Grace Etheredge, and Paul T. Jones. Three amendments were offered and allowed to the petition. The material allegations of the petition as amended were as follows:
B. H. Baker, late a resident of Warren County, Georgia, died intestate on June 6, 1937, leaving as his only heirs at law petitioner and Mrs. Essie Baker Etheredge, and owning a large estate of the value of some $400,000, with no debts "except to his heirs at law." J. Lee Etheredge Jr., and Paul T. Jones, neither being a creditor of the estate nor selected in writing by a majority of his heirs at law for appointment as his administrator, applied to the court of ordinary for such appointment, and were so appointed by that court, and administered on what they claimed was the estate of B. H. Baker, with J. Lee Etheredge Sr. as surety on their official bond; said administrators taking possession of all the documents, deeds, papers, and accounts of Baker, and of $9,568.61 on deposit to his credit in bank, and claiming that such money was his only estate, out of which they paid his funeral expenses, expenses of administration, and what they claimed was a debt due to Mrs. Etheredge; and later procuring their discharge as such administrators. Petitioner avers, that such administration was wholly fraudulent as to her; that the administration upon said estate was a part and parcel of the scheme of the defendants to defraud your petitioner of her said just share of the estate of her father, and his assets were purposely withheld therefrom and in the interest of *Page 795 
said administrators personally; that the letters of discharge granted to J. Lee Etheredge Jr. and Paul T. Jones are utterly void by reason of the fraud practiced upon the ordinary when they procured their issuance, and such letters should be canceled and set aside; and that the fraud practiced upon the ordinary was to represent to him the value of said estate and thus procure their appointment, and to misrepresent to the court of ordinary the value of the property of said B. H. Baker, and to procure a discharge from their trust as administrators from said court of ordinary without having administered said estate as required by law.
"In the fall of 1929, when in a fit of frenzy over the improvement of a house rented by a negro woman tenant, one Jessie Lee Harris, he [B. H. Baker] suddenly killed her while in Augusta, Georgia. He cut her throat with a pocket-knife; but this he would not have done had he been himself mentally, which he was not and had not been for some considerable time, but as a result was indicted by the grand jury of Richmond County, Georgia, for murder on February 4, 1930.
"From that time on, said B. H. Baker further deteriorated mentally and physically, lived in a cloudy state of mind and in daily apprehension and fear, unable to attend to his business, and accordingly allowed his son-in-law, said J. Lee Etheredge Sr., to look after, manage and attend to such business for him.
"That said B. H. Baker, old, feeble, and mentally deteriorated, was, after trial in Richmond superior court, acquitted of the said charge of murder on October 21, 1930, but he continued to remain in said enfeebled mental and physical condition, and from the time of said killing to the time of his death was all the while under the absolute domination, undue influence and control of said son-in-law, who, with the aid of his wife, said Essie Baker Etheredge, their son, J. Lee Etheredge Jr., and their daughter, Grace Etheredge, combined, confederated, and conspired together to procure from the said B. H. Baker conveyances to the great bulk of his estate, all in their own interest, and with intent to deprive petitioner of her equal proportionate share in the estate of her father; and owing to his mentally depleted and enfeebled condition they easily succeeded in having said Baker, while in such condition, sign deeds to them, which they had prepared, to the greater portion of his estate. *Page 796 
"That the said B. H. Baker then from time to time after said killing, when no longer himself and when unable to conduct his business as formerly, nor make contracts therefor, began, at the instance of said J. Lee Etheredge Sr., to withdraw large sums of money that he, Baker, had on deposit in his name in banks, and he did so by reason of the undue influence and pressure brought upon him by said J. Lee Etheredge Sr., and the members of the Etheredge family, that is, by Essie Baker Etheredge, . . . J. Lee Etheredge Jr., and Grace Etheredge. That such withdrawals totaled some $94,500, all of which were without consideration to said B. H. Baker, but made at the instance of said Etheredge, and for the purpose of defrauding your petitioner of her equal share in the estate, and of which purpose said Baker was not aware; a list of which is attached as exhibit `C' hereto.
"All of said conveyances of cash, and of realty, as listed as exhibit `B' and `C' were unduly obtained from said Baker by said Etheredge family with intent to deprive and defraud the State of Georgia of taxes due it, and petitioner of her equal inheritance in the estate of her father; and in so executing the said conveyances said Baker did not act of his own free will, but was unduly influenced by said J. Lee Etheredge Sr., who substituted his own will for that of said Baker who did not understand what he was doing.
"That in so doing said Baker did not realize nor know the full effect of what he did, nor did he know of the combination against him, nor did he intend such action to result to the disadvantage of petitioner, so as to deprive her of her one-half of his estate; for while she was not present and did not know of said conveyances until long afterwards, yet the said J. Lee Etheredge Sr., in order to impress said Baker with the idea that such deeds provided for an equal disposition of his property, with half to petitioner, also had prepared and had signed by said Baker a deed conveying to petitioner a list of property, but of small value, some $3,000, and by which he, said Etheredge, deceived said Baker and made him believe that such deed conveyed to petitioner the equal share to which she was entitled . . and would have the effect of avoiding and defeating all inheritance taxes . . and would save expense in the administration of his estate, and were to the best interest of his, Baker's children, — that is, of said Essie *Page 797 
Baker Etheredge and petitioner. That the undue influence brought to bear upon said B. H. Baker was, that defendants knew he was old and in his dotage and was apprehensive that what he had would be dissipated by reason of a suit that had been threatened against him by the heirs at law of the negro woman that he had killed, and also feared that if he died in possession of all the property he owned, it would be greatly dissipated by inheritance taxes; and in this manner they overreached him and procured him to make to them the alleged deeds and gifts as set out in this petition.
"Petitioner has not resided in Augusta for a number of years, and was absent therefrom during the entire period above stated while all of the manipulations hereinabove were being instituted and carried out, and had no knowledge thereof, and was utterly astounded to find in the fall of 1938 the extent to which she had been defrauded by defendants out of her inheritance — her half of her father's estate, valued at $200,000, and for which she is entitled to judgment against all defendants. That your petitioner, as stated, did not and could not discover the fraud practiced upon her by the said administrators of her father's estate nor by the said J. L. Etheredge Sr., and his family, until the fall of 1938, because there existed between them and her a fiduciary and confidential relationship, and especially with the said J. Lee Etheredge Sr., who had advised her as to her personal affairs, and in whom she had utmost confidence, and also with the said J. Lee Etheredge Jr., who acted as her agent in connection with her property, and petitioner avers that her relations with the defendants herein, the Etheredge family, were such that she had implicit faith and confidence in them, and had such faith in their fidelity that it never occurred to her to question their fairness nor square dealings with reference to her interest in the estate of her father until she learned recently of the acts herein disclosed. Petitioner was also informed by said J. Lee Etheredge Sr., that her father had given her $38,000 in cash, and that such was her fair and just share of the cash, but she has since learned this was not true, but that the Etheredges obtained in cash the sum of $94,500, or some $48,500 more than petitioner."
Paragraphs 28, 29, and 30 of the petition, assailing as invalid two deeds made by B. H. Baker to the defendant Paul T. Jones, were as follows: *Page 798 
"28. That in addition to the facts hereinabove alleged, petitioner charges that as a part of the scheme to prevent your petitioner from receiving her just share of her father's estate, the said Paul T. Jones, who was the agent of said Baker in Warren County, Georgia, and the said J. Lee Etheredge Sr., agent in Richmond County, Georgia, and J. Lee Etheredge Jr. caused the said B. H. Baker to make a deed to said Paul T. Jones, upon a recited consideration of natural love and affection, under date of November 9, 1935, and recorded in the clerk's office of Warren County, Georgia, . . covering the following described property [describing it]. And also caused said B. H. Baker to make another deed to said Paul T. Jones, upon a recited consideration of kinship, help, promises and the sum of $5, under date of November 1, 1933, covering the following described property [description]. And also caused said B. H. Baker to execute unto said Paul T. Jones a transfer of a certain security deed held by the said Baker which said transfer is dated October 27, 1936, which security deed covers various and sundry property.
"29. That the expressed consideration of love and affection, and $5, and services rendered, was wholly untrue, and that said Baker was not indebted in any way to said Jones for services rendered; and that by reason of his agency in representing the said Baker as agent in Warren County for several years, he, the said Jones, was prohibited from obtaining said property on the terms stated.
"30. That not only were said deeds without consideration, but were the result of the undue advantage taken by said Jones of said Baker, his principal, who was mentally unable to make the contracts in question, or fully realize any such contracts as was called for by said deeds, and that no title to said property passed under said deeds from said Baker to said Jones, as he, the said Jones, had not individual title under said deeds, but held the same in trust for the use of the heirs at law, your petitioner and said Essie Baker Etheredge."
An amendment to the petition added the following: To paragraph 28: "That the said Paul T. Jones having ingratiated himself into the affections of said B. H. Baker, he used his influence to procure the deed to the 13,000 acres of land from said B. H. Baker, paid nothing for it, and was not a son and so closely related *Page 799 
in blood as to arouse in the said Baker any natural love and affection, and therefore petitioner says that said deed was wholly ineffective to pass title." To paragraph 29: "That the said defendant, Paul T. Jones, acted as the overseer and general manager of all of the farming lands of said B. H. Baker in Warren County." To paragraph 30: "That said defendant, Paul T. Jones, took undue advantage of said B. H. Baker in his old age and dotage, and after he had placed his business under his supervision, then he played upon the feelings and affections of said B. H. Baker and procured him to make the deed in question; and when he did so, he knew that said B. H. Baker was attempting to give him, Jones, something that your petitioner was entitled to receive as a child and heir at law of the said B. H. Baker." Numerous other allegations were made.
The petitioner prayed: "(1) That the court will decree that all of the property hereinbefore mentioned in this petition, real and personal, and in the exhibits hereto, was that of the said B. H. Baker, deceased, and that title thereto is now in his heirs at law, petitioner and said Essie Baker Etheredge, as tenants in common; and that the court will decree an equitable partition thereof as between the said Essie Baker Etheredge and petitioner, each accounting to the other for such parts thereof as each may have received. (2) That the court will require each defendant herein to come to a true and full accounting thereof with petitioner and said Essie Baker Etheredge as to such parts of said property, real and personal, each defendant may have heretofore received or obtained from said B. H. Baker, and require each defendant to convey the same to said Essie Baker Etheredge and petitioner, as tenants in common, as aforesaid. (3) That the several deeds to said property, or parts thereof, as obtained by each defendant from said Baker, be brought into court and decreed null and void, and cancelled as clouds upon the title of petitioner to such property and formerly that of B. H. Baker, deceased. (4) that each defendant herein be required to pay into the registry of this court, the money obtained from said Baker as set out in the exhibits hereto attached, and that such sum be equally divided between said petitioner and the said Essie Baker Etheredge, heirs at law of said B. H. Baker, deceased. (5) That judgment be rendered by the court in favor of petitioner against each and all of the *Page 800 
defendants herein in the sum of $200,000, the value of petitioner's half interest in said property, and that such be paid by conveyances to her, of her share of said property as aforesaid, or, in default thereof, by levy and sale of the property of each defendant herein under judgment and decree of this court. (6) That such other and further relief be granted petitioner as the nature and circumstances of the case requires, and to equity shall seem meet."
Two answers were filed, one by the Etheredges jointly and one by Paul T. Jones. These answers put in issue all the allegations of the petition as to mental capacity of B. H. Baker, and as to fraud, undue influence, and coercion on the part of the defendants. Both answers also denied the alleged fraudulency of the administration of the estate of Baker. In the answer of the Etheredges it was further alleged that Etheredge Jr. and Jones applied for appointment as administrators "only after having been requested to act by all of the heirs" of Baker, and that "their appointment and administration of Mr. Baker's estate fully complied with every rule of law and was honest, impartial and just." In the answer of Jones it was stated, he "admits the allegations in paragraph four of the petition that J. Lee Etheredge Jr., and this defendant, Paul T. Jones, applied to the court of ordinary of Warren County, Georgia, for appointment as administrators on the estate of B. H. Baker, and that the said J. Lee Etheredge Jr. and this defendant were, in pursuance of said application, appointed administrators on said estate." In both answers it was averred that at the time of his death Baker had no other property except that dealt with by the administrators, having disposed of the same before his death. Still other affirmative allegations were made by way of defense in both answers. A general demurrer to the petition as amended was overruled, but there is no cross-bill of exceptions.
The jury found in favor of the defendants generally, and judgment was entered accordingly. A motion for a new trial was overruled, and the plaintiff excepted.
1. The overruling of the general demurrer must *Page 801 
be treated as adjudicating that the petition stated a cause of action for some of the relief prayed, there being no cross-bill of exceptions. The evidence has not been set forth in the preceding statement, and we do not deem it necessary to state it here. We have carefully examined every particle of it, and have reached the conclusion that a verdict for the plaintiff would have been authorized. Considering the testimony as to the relationship and associations between the decedent and the defendants, and as to some circumstances which the jury might have considered as badges of fraud, and in view of the evidence as to the consideration for some of the deeds, the plaintiff's testimony as to the decedent's mental condition, and other circumstances, we can not agree with counsel for the defendants that the verdict for the defendants as returned by the jury was demanded. Therefore it is necessary to pass upon the special grounds of the motion for new trial, in which it is contended that certain errors were committed during the trial. The grounds of the motion for new trial are referred to herein according to the numbering in the amendment to the motion.
2. In ground 6 it was contended that the court erred in failing to submit to the jury the first charge of fraud made by the plaintiff against the defendants, to wit: as to fraudulent administration upon the estate of B. H. Baker, concerning which it is insisted that the evidence presented an issue of fact for the jury. The judge did state to the jury that the plaintiff contended the administration was fraudulent, but he nowhere charged the law applicable to such particular issue. There was at least some evidence to support the contention of the plaintiff as to this matter; and this being true, the judge erred, as contended, in failing to instruct the jury thereon. As to the duty of the court to instruct the jury on the substantial issues made by the evidence, whether requested to do so or not, seeWhedon v. Knight, 112 Ga. 639, 644 (37 S.E. 972);Bostick v. Farmers Supply Co., 147 Ga. 635 (95 S.E. 212);Garbutt v. Mayo, 128 Ga. 269 (5), 278 (57 S.E. 495, 13 L.R.A. (N.S.) 58). It may be true that if all of the other transactions assailed by the plaintiff were invulnerable as a matter of law, so that the deceased died owning no property besides that which was actually administered, the plaintiff would not show such injury as would entitle her to complain merely because the administrators may have been appointed upon a false statement that they had been *Page 802 
selected in writing by a majority of the heirs at law; but since the jury under the evidence would have been authorized to find that some of the deeds in question were invalid, and since if any of these deeds were invalid the amount of the estate for administration would have been materially increased, it can not be said that the error in failing to so charge was harmless.
3. In ground 12 the movant complained of the following charge: "I charge you that fraud is not presumed, and can not be presumed, but it must be proved; but fraud being subtle in its nature, slight circumstances are sufficient to justify its existence. The plaintiff in this case having charged fraud, gentlemen, the burden is upon her to show fraud as well as undue influence practiced upon Mr. Baker by the defendants as she contends." It is contended that this charge was erroneous, because it placed upon the plaintiff the burden of showing both fraud and undue influence, whereas under the pleadings and the evidence she might have recovered on proof of either. We think this exception is well taken. "Fraud and undue influence are not equivalent terms; undue influence may be a species of fraud, or it may exist without any positive fraud." DeNieff v. Howell,138 Ga. 248 (6), 252 (75 S.E. 202). The error in this charge is similar to that for which the judgment was reversed in Evans
v. Coleman, 101 Ga. 152 (28 S.E. 645), where it was held that in a suit by a creditor to cancel an alleged fraudulent conveyance it was erroneous to charge that if the debtor made the conveyance with the intent "to `delay, hinder, and defraud' his creditors, it would be void." It was further said: "The acts voiding the conveyance should have been stated disjunctively. Stating them conjunctively imposed upon the creditor a greater burden than the law does." See Gill v. Willingham, 156 Ga. 728
(5) (120 S.E. 108); Varn v. Bloodworth, 157 Ga. 300
(5), 310 (121 S.E. 380). We can not agree that other portions of the charge in this case were such as to cure the error complained of. The judge may have intended to say only that in so far as the plaintiff relied on fraud she would have the burden of proving it, and that in so far as she relied on undue influence she would likewise have the burden of proof. On the other hand, the charge as given could reasonably have been understood by the jury as meaning that in order for the plaintiff to recover at all, it would be incumbent upon her to prove both fraud *Page 803 
and undue influence. "The jury should not be left to decide between conflicts in the charge, without having their attention directed thereto by the court and being instructed as to which of the antagonistic principles is correct and applicable, and which should be disregarded." Savannah Electric Co. v. McClelland,128 Ga. 87 (2) (57 S.E. 91).
4. In ground 15 complaint was made of the following charge: "Slight evidence of fraud and undue influence may authorize the jury to cancel the deeds, and is sufficient to shift the burden to the defendants and require them to show that the transaction was fair and free from fraud and undue influence; but before that burden shifts to the defendants you must believe that sufficient fraud has been shown to you to justify investigation into the merits of the transaction." The complaint is that this charge was confusing as to what was meant by burden of proof, especially in view of the last clause, "but before that burden shifts to the defendants you must believe that sufficient fraud has been shown to you to justify investigation into the merits of the transaction." This exception is well taken.
5. We have carefully considered the other fourteen special grounds of the motion for new trial, and have reached the conclusion that no reversible error is shown in any of them. The evidence admitted over objection in five instances was not inadmissible for the reasons urged. The exceptions as taken to other portions of the charge, and to omissions to charge, do not show cause for a new trial, under the evidence as presented by the record.
For the reasons stated in the three preceding divisions, a new trial should have been granted. In holding that a verdict for the plaintiff would have been authorized, we do not mean to say that such verdict would have been authorized as to every transaction under attack; but since the various issues were in some respects closely related and interwoven, and since a general verdict in favor of the defendants was returned, we reverse the judgment generally and without direction.
Judgment reversed. All the Justices concur, except Reid, C.J., and Atkinson, P. J., who dissent. *Page 804