40444.   LINCOLN LIFE INSURANCE COMPANY OF GEORGIA v. ANDERSON.

Decided March 3, 1964.

*Robert E. Knox, Warren D. Evans,* for plaintiff in error.

*W. Tom Veasey, J. Cecil Davis, E. Purnell Davis,* contra.

Russell, Judge. ■ "A ground of a motion for new trial is without merit when based solely on the fact that a principle of

law which the movant insists should have been given in charge was omitted in the instructions originally given to the jury, but was given in a recharge to the jury." *Blount v. Dean,* 187 Ga. 494 (7) (1 SE2d 653). Special ground 5 of the amended motion for new trial is without merit.

■ The defendant insurance company in this case had two and only two defenses. It pleaded facts, and offered testimony to show, (a) that at the time the deceased applied for the policy of life insurance he was not in sound health, that some of the facts stated in the application were false, that this was a material misrepresentation and that had the defendant known the truth it would not have issued the policy, and (b) after the death of the insured the defendant's agent informed the plaintiff beneficiary that the policy was void because of these facts and tendered her the amount of the premiums paid, which she accepted in full settlement of the claim, executing a written release upon which the company relied as an absolute discharge of liability. In his original instructions the court covered the first line of defense in considerable detail but never mentioned the second, except in passing as one of the contentions of the parties, and without any statement that the facts contended for, if proved, would entitle the defendant to prevail. After the jury had deliberated for about an hour the judge recalled them and stated: "Gentlemen of the jury, there are just one or two small items here that I neglected to charge you a while ago and I think probably I should charge you." He then instructed them for the first time the law relating to the second defense, that the burden was on the defendant to establish it and that the facts pleaded would, if proved, operate as a full satisfaction of the claim. He also added material instructions relating to the fraud defense, and to the burden of proof on the issue of bad faith. Was the characterization of this charge, particularly that embracing all of the instructions relating to the defense of accord and satisfaction, as "just one or two small items" an implicit indication that this part of the case was of little importance? Was the remark, "I think probably I should charge" an indication of doubt as to the propriety or materiality of submitting this issue to the jury? The trial court has a duty, even in the absence of request, to

charge the jury the law as to every controlling, material, substantial and vital issue in the case. *Jackson v. Matlock,* 87 Ga. App. 593 (1) (74 SE2d 667); *Chambliss v. Kindred,* 214 Ga. 712 (3) (107 SE2d 205); *Anderson v. Barron,* 208 Ga. 785 (4) (69 SE2d 874); *Daniel v. Etheredge,* 191 Ga. 793 (2) (13 SE2d 763). Where it fails to give the defendant the benefit of a theory of the defense which is sustained by the evidence introduced in his behalf, a new trial must be granted. *Clark v. Sapp,* 47 Ga. App. 91 (2) (169 SE 692); *Susong v. McKenna,* 126 Ga. 433 (55 SE 236). The original charge contained reversible error in that it did not instruct the jury as to the law regarding one of the only two defenses urged. This error the court attempted to correct in his recharge—but only after prefacing the instruction by the observation, in substance, that this was a matter so small he had omitted it in the first instance, and only later decided he should probably mention it. "Where the trial judge, throughout the body of his charge, entirely ignored the main theory upon which the contentions of one of the parties were based, the error was not cured by giving briefly, in a single sentence at the conclusion of the charge, an instruction summarizing the principle relied upon by such party." *Whedon v. Knight,* 112 Ga. 639 (37 SE 972). A prejudicial remark by the court tending to disparage or belittle a defense, even though lightly made, is reversible error if the jury could interpret it as minimizing the defense. *Cook v. State,* 40 Ga. App. 125 (2) (149 SE 79). In such a case, the trial court has "the duty of non-committal." *Jenkins v. State,* 123 Ga. 523, 529 (51 SE 598). In *Smith v. State,* 109 Ga. 479 (35 SE 59) the trial court failed to charge on the defendant's theory in the body of the instructions; as he concluded he stated the law relating to this theory briefly and added, "I see I have got that noted here, but in my charge I did not think to call your attention to it." In holding such a statement reversible error, the court said, "The only defense of the accused . . . was worse than ignored. It was chilled by judicial oversight or blighted by implied judicial disapproval."

It is the duty of the trial court not only to instruct the jury on every material issue in the case but to do so in such a manner that no contention of either party supported by evidence is by

implication minimized or disparaged. We cannot say that the reference to so important a defense as that of settlement as a "small matter" which the judge did not think even to call to the jury's attention until they had been out for a considerable period of time did not, as to them, tend to convey the impression that this particular principle of law was of little importance. This being so, it requires a reversal of the case.

■ The defendant's motion for judgment notwithstanding the verdict and for motion for new trial on the general grounds will be treated together with the assignment of error on the instruction as to the grant of attorney's fees and penalty for bad faith.

On the issue of fraud in the procurement of the policy the following evidence appears: The defendant's agent, who filled out the application, testified that he read to the applicant all of the questions listed therein and wrote down the answers made by the applicant—all before the signature of the applicant was affixed by his mark, including the question "Have you ever been treated for or had any known indication of heart trouble or murmur, chest pain, high blood pressure, abnormal pulse, convulsions, fainting spells?" To this question the applicant answered in the negative and the agent so indicated. The applicant indicated to the agent that he could not sign his name and it was affixed by his mark, witnessed by the agent. A sister of the plaintiff testified that she was present when the agent filled out the application but that no questions were asked the insured relative to his health. The application was dated October 11, 1961. Plaintiff, beneficiary in the policy, denied that her deceased husband had experienced any spells or heart trouble to her knowledge, but admitted that he had gotten sick and had gone to Dr. Harper. Dr. Harper testified that the deceased had visited him on September 5, 1961, complaining that he had, on that day and previously to coming in, "experienced a spell," and that on examination he found him to be suffering with a marked elevation of blood pressure. He placed the insured on a low salt diet, which was indicated in such cases and gave him some medication designed to lower the blood pressure. As to whether he told the insured about his condition Dr. Harper testified: "I presume I did inform him that he had elevated blood pressure, or

high blood pressure. It is my policy to tell folks what's wrong with them if I know. Sometimes I don't [know] and I tell them I don't. But I did know in this case and I treated him for such, and it is my policy to tell them what my findings are." The insured's employer testified that the insured had worked for him as a farm hand for some 13 years, that he was a good worker and worked two days before he died; he had not known him to be a sickly person, but "he had had some spells—epilepsy I believe is what they said"; that Dr. Harper was treating him for it along in the fall of 1961—in September, 1961; that the insured could write his name and had endorsed his pay checks.

Relative to the insured's death Dr. Harper testified: "I saw him on February 19, 1962 . . . he was seen in the home, having died shortly before I got there, with a history of having had cold, cough, and fever, with these previous shaking spells, which we have seen him have one convulsion, and we know that there were other convulsions. It was our impression that he had what we call a convulsive tendency, and he would have an elevation of his blood pressure or when he had a fever, as it happened back in early November, that the fever or elevated blood pressure would trigger his brain into these convulsive spells."

On the matter of whether there had been a settlement of the beneficiary's claim under the policy, or an accord and satisfaction the defendant introduced a release purporting to have been signed by the beneficiary, witnessed by the company agent, in which it was recited that for a consideration of $16.66 she released and discharged the company from all claims under the policy. The company agent who took the release testified that he explained to the beneficiary that the company had made an investigation and learned that the insured had suffered from high blood pressure and "spells" prior to applying for the policy, by reason of which he was not an insurable risk and that as a result of this the only obligation of the company was to refund the premiums that had been paid on the policy, and that she fully understood and willingly accepted the company check for $16.66, which she had not yet cashed.

Plaintiff testified that she had been through only the third grade in school, could write her name and read numbers but that

she did not understand and could not read the words "release," "policy," or "statement"; that defendant's agent did come to her house saying that he wanted to pay off the policy and that he got her to sign a paper before he gave her a check, and that after he left she knew the check was not right and took it to her employer for advice and left it with him.

Where an application for insurance is not attached to and made a part of the policy, representations made by an insured as to his previous state of health will not, merely because of their falsity, void the risk unless it clearly appears that the insured made the statements for the purpose of fraudulently inducing the insurer to issue the policy. *National Life &c. Co. v. McKenney,* 52 Ga. App. 466, 469 (2) (183 SE 659).

The evidence made a jury question as to whether the insured here had misrepresented his state of health and, if so, whether he had done so with a fraudulent intent. *Progressive Life Ins. Co. v. Gazaway,* 67 Ga. App. 339 (20 SE2d 189). There was a jury question as to whether the agent questioned the insured at all relative to his health, and whether the insured had signed the application with his mark contrary to his custom. Likewise there was a jury question as to whether the release had been fairly obtained, for plaintiff denied that the agent read it to her or told her that it was a release and asserted that she had no way of knowing what it was. Thus the matter of whether there had been a binding accord and satisfaction was properly submitted to the jury.

But if the jury should find on these facts, as they apparently did, that there was no binding accord and satisfaction because of the circumstances above related, a finding for penalty and attorney's fees would not be authorized unless it should appear that the refusal of the company to pay the face amount of the policy had been a frivolous and unfounded denial of liability, and that the company had no reasonable ground for contesting the claim. "In construing the term 'bad faith' this court in *Cotton States Life Ins. Co. v. Edwards,* 74 Ga. 220, ruled that 'bad faith' means 'any frivolous or unfounded refusal in law or in fact' to comply with the terms of the contract under the conditions imposed by statute. This construction of the term 'bad faith' has

been cited and applied by the Court of Appeals in many cases. For some of these decisions see: *Missouri State Life Ins. Co. v. Lovelace,* 1 Ga. App. 446, 466 (58 SE 93); *American Ins. Co. v. Bailey & Musgrove,* 6 Ga. App. 424 (7) (65 SE 160); *Georgia Life Ins. Co. v. McCranie,* 12 Ga. App. 855, 857 (78 SE 1115); *New York Life Ins. Co. v. Watson,* 48 Ga. App. 211, 214 (172 SE 602); *Bankers Health &c. Ins. Co. v. Brown,* 49 Ga. App. 294 (175 SE 387); *Sentinel Fire Ins. Co. v. McRoberts,* 50 Ga. App. 732, 744 (179 SE 256); *Liberty Mutual Ins. Co. v. Atlantic C. L. R. Co.,* 66 Ga. App. 826, 834 (19 SE2d 377); *Mutual Life Ins. Co. of New York v. Barron,* 70 Ga. App. 454, 460 (28 SE2d 334); *Independent Life &c. Ins. Co. v. Thornton,* 102 Ga. App. 285, 292 (115 SE2d 835)." *Life Ins. Co. of Ga. v. Burke,* 219 Ga. 214, 219 (132 SE2d 737).

The facts of this case are closely parallel to those in *Gulf Life Ins. Co. v. Moore,* 90 Ga. App. 791, 797 (84 SE2d 696), where Judge Townsend, speaking for the court, said: "There is no question that the statements in the application were false and that the insured, if she knew what they were, must have known they were false. There is no question but that they were material and changed the extent, nature and character of the risk, and it must be conclusively presumed, if they were made falsely, that they were falsely made with intent to procure insurance, which would be a legal fraud." Here, as in *Moore,* there is a direct contradiction in the record as to whether the alleged false answers were given at all by the insured in connection with the completion of the application, and as to whether the application was read to the applicant before his signature by mark was affixed thereto. There was evidence here from which a jury could have found that the insured could sign his name, and thus there was a jury question as to whether he signed the application at all. Here, as in *Moore,* a third party who was present when the application was completed testified that the company agent made no inquiry to the insured concerning his health. The parallel is so close until it is inescapable that *Moore* is controlling—and it was there held that the defendant did have reasonable ground for denying liability and contesting the claim.

Any knowledge of the defendant's officers and agents in charge

of the paying of claims against it as to what the agent who solicited the application may have done or as to information that he may have obtained in that connection was imputed knowledge only unless it appeared on the completed application, and not actual knowledge or the equivalent of actual knowledge that would make the defendant liable, because of estoppel, for penalty and attorney's fees. *Bankers Health &c. Ins. Co. v. Hamilton,* 56 Ga. App. 569, 572 (193 SE 477); *North American Acc. Ins. Co. v. Gilbert,* 59 Ga. App. 104 (199 SE 768); *Guarantee Trust Life Ins. Co. v. Hill,* 90 Ga. App. 287 (4) (82 SE2d 885); *Reserve Life Ins. Co. v. Bearden,* 96 Ga. App. 549, 554 (3) (101 SE2d 120). Likewise, their knowledge as to any improper action of the agent who secured the release is imputed knowledge, and no more works an estoppel than the imputed knowledge as to the circumstances surrounding the obtaining of the application.

The evidence relative to the obtaining of the release does not require any different result. It was the company's determination that it had grounds for contesting the claim that formed the basis for sending its agent out to make refund of the premiums and obtain the release. "Where it appears from the evidence that the defendant's refusal to pay was justified on the basis of the facts appearing to the defendant at the time of the refusal, bad faith is not shown." *Royal Ins. Co. v. Cohen,* 105 Ga. App. 746 (3) (125 SE2d 709). And when the taking of a release was justified on the basis of facts appearing to the defendant at the time it was taken the same rule must be applied. Under the provisions of the policy a return of the premiums was all that the plaintiff was entitled to receive if the company's defense that the policy had been fraudulently obtained were sustained, and in that situation it would not matter that the plaintiff was an illiterate person who did not know or understand the provisions of the release. But even if the defendant's position as to whether the policy was fraudulently procured was not well founded, a settlement of the claim by return of the premiums paid might have been effected in good faith since the insured was not in fact an insurable risk, and the company was entitled to assert that as a defense. Whether there was any fraud in the obtaining of the release was a sharp jury issue.

"[I]f the evidence can be said to have authorized a finding in accordance with the contentions of the defendant, a finding of bad faith is not authorized." *Royal Ins. Co. v. Cohen*, 105 Ga. App. 746 (3), supra. It can not be said that a verdict for the defendant would not have been authorized here, both as to the fraudulent procurement of the policy and as to the settlement and obtaining of a release by a return of the premiums.

We observe here, as did Judge Townsend in *Moore*, that "this being a closely contested case, in which it appeared that the defendant had reasonable ground for denying liability," there could be no recovery of penalty or attorney's fees.

The trial court erred in overruling the motion for new trial, but since the evidence does not demand a verdict for either party the overruling of the motion for judgment n.o.v. was proper.

*Judgment reversed. Felton, C. J., and Eberhardt, J., concur. Russell, J., concurs specially.*

Russell, Judge, concurring specially. Without further going into evidence set out in the majority opinion (Division 3), the evidence showed (a) that the deceased customarily endorsed his name on pay checks, and had done so within a month of the date of this application; (b) the doctor in question never testified that he had told the deceased what his ailment was and did not remember whether he had or not, and (c) evidence as to the previous "spells" was very unsatisfactory.

I disagree with the conclusion reached in Division 3 because in my opinion actual fraud always constitutes bad faith. The actual fraud of the agent, if imputable to the principal, is fraud on the part of the principal although another agent of the corporation in acting to deny liability may not have had knowledge of the fraud of an agent binding upon the company. As to the acts of a soliciting agent, "Where . . . such agent undertook to prepare for another an application for insurance and wilfully inserted therein a false answer to a material question, he will be regarded in so doing as the agent of the company and not of the applicant, and the agent's knowledge of the falsity of the answer will be imputed to the company." *Clubb v. American Acc. Co.*, 97 Ga. 502 (25 SE 333); *Stillson v. Prudential Ins. Co. of America*, 202 Ga. 79, 81 (42 SE2d 121); *National Life &c.*

*Ins. Co. v. Goolsby,* 91 Ga. App. 361, 364 (85 SE2d 611); *Reserve Life Ins. Co. v. Ayers,* 217 Ga. 206, 214 (121 SE2d 649).

Likewise, the fraud of the claims adjuster in procuring the plaintiff to sign a release of all claims for the return premiums in the belief that she was signing a receipt for the check was actual fraud of the agent imputable to the principal. The plaintiff could not get a verdict in this case without the jury finding actual fraud on the part of the defendant as to both of its defenses, and that both of these acts were imputable to the defendant. The defendant, having been guilty of fraud through the acts of its agents (through whom alone it could have acted) is estopped, under *Stillson* to assert these defenses. It must therefore necessarily have been acting in bad faith. Either defense, if proved, would necessarily result in a verdict for the defendant. Either defense, not proved, establishes actual fraud on the part of the defendant through its agent. Whether or not bad faith exists is usually a jury question. *American Cas. Co. v. Callaway,* 75 Ga. App. 799 (2) (44 SE2d 400). The jury having found there was bad faith as a condition precedent to a recovery by the plaintiff, it seems to me that it logically follows there is also a right of recovery of attorney's fees under *Code Ann.* § 56-1206.